ADOLPH MISPELHORN *vs.* THE FARMERS' FIRE INSUR-
ANCE COMPANY OF YORK, PENNSYLVANIA.

*Evidence in an action to recover on a Policy of Fire Insurance—*
*Production under a Condition of the Policy of Duplicate*
*Bills of Goods destroyed—Reasonable Time—Burden of*
*Proof.*

The plaintiff was required by a condition of a policy of fire insurance
issued to him by the defendant, in case of loss or damage by fire
to his stock in trade thereby insured, to furnish to the defendant
the bills of purchase or duplicates thereof. Loss by fire occurred
and suit was brought. The plaintiff furnished neither the bills of
purchase nor duplicates thereof. At the trial, the plaintiff proved,
that he had purchased goods of the house of a witness produced
by the defendant, and the defendant proposed to show by the
testimony of the witness, in connection with the books of his firm
produced in Court, containing entries of sales made to the plain-
tiff within the time spoken of by the plaintiff in his testimony,
that though the witness had no personal knowledge of the
sales of the goods charged in the books, and did not himself make
the entries, yet the bills had been rendered to the plaintiff and had
been paid by him, and that duplicates of the bills could have
been obtained by the plaintiff, if he had applied for them. On
objection by the plaintiff, it was HELD:

That this evidence was admissible to show, that the plaintiff could
have obtained duplicate bills.

The defendant to show that the loss claimed by the plaintiff was
exaggerated, proved by an officer of the Court whose duty it was
to issue traders' licenses, that a trader's license was issued to the
plaintiff for 1876, (in which year the fire occurred;) and that the
affidavit required by law to be made, was made in the regular
course of the business of the Clerk's office, which affidavit stated
the amount of the plaintiff's stock as not exceeding in value
$1000; and that it was made by the person to whom the license
was granted. On objection by the plaintiff, it was HELD:

That the affidavit with the explanation offered by the officer was
admissible in evidence.

As to what was the reasonable time under the condition of the policy within which the defendant was required to make known its dissatisfaction with the proofs furnished by the plaintiff, and to demand the production of the bills of purchase or duplicates thereof, was not a question of fact to be submitted to the jury: but a question of law involved in the legal construction of the policy, and it was for the Court to determine upon facts to be found by the jury, whether the demand for the bills or duplicates was made within a reasonable time or not.

The burden of proof was on the plaintiff to show, that it was not possible for him to comply with the terms of the condition requiring the production of the bills of purchase or duplicates thereof, by the use of all reasonable means within his power. The object of such a condition is protection to the insurance company as furnishing the mode and means whereby the ordinary proofs of loss may be scrutinized, and their accuracy tested.

APPEAL from the Court of Common Pleas.

All the material facts of this case, now on its second appeal, are contained in the report in 50 *Md.*, 180, and in the opinion of the Court on this appeal; except the ninth condition of the policy, which is as follows:

Any misrepresentation or concealment, fraud or false swearing, shall cause a forfeiture of all claims on the insurers, and shall be a full bar to all remedies against this Company under this policy. And said Company shall in no case be deemed to have waived a full, literal and strict compliance with, and performance of each and every of the terms, provisions, conditions and stipulations in this policy contained, and hereto annexed, to be performed and observed by and on the part of the insured, and every person claiming by, through or under them; unless such waiver be expressed and manifested in writing, under the signature of the president and secretary of said Company.

*First Exception.*—At the second trial of this case in April, 1879, as ordered by this Court at the October Term, 1878, the plaintiff to sustain the issue on his part offered

in evidence the policy of insurance for $2500, and called upon the defendant to produce the preliminary proofs of loss furnished by him to the defendant, and they were produced. The plaintiff then testified in his own behalf and offered other evidence.

And the defendant, to maintain the issue on its part, offered evidence by several of the witnesses, from whom the plaintiff had testified that his goods were purchased, that they could have furnished the plaintiff with duplicate bills of the goods he bought from them, at any time after the fire; and that they would have furnished him with such duplicates, if he had requested them.

Among the witnesses who so testified, was one whose sales to the plaintiff had been for cash; the purchases made from the witnesses above named, were made at various times during the year before the fire.

These witnesses produced the books in which the sales of goods made to the plaintiff during the year preceding the fire, were entered, from which the original bills had been made out and rendered to the plaintiff, and they produced in Court duplicates of said bills taken from said books.

There were fifty-six duplicate bills from various parties, amounting in the aggregate to $283.53, one of them, Mr. Cobb, of the firm of Higgins, Cobb & Co., auctioneers, produced the books of his firm, containing entries of sales made to the plaintiff in 1876, and testified that the plaintiff could have had duplicates of the bills rendered, if he had requested them at any time after said sales were made. Witness further stated, that he did not personally sell the goods charged in said books to the plaintiff, and he had no personal knowledge of the sales, or of the correctness of said charges in the book, not having sold the goods or made the entries himself, but that he had seen the plaintiff in the store buying goods; that bills for the purchases entered in the books produced, had been rendered to the

plaintiff and had been paid by him. The plaintiff excepted to the testimony of the witness Cobb, without other proof that the goods shown by the entries produced had been in fact sold by his firm to plaintiff; but the Court (BROWN, J.) overruled the objection and admitted the evidence; to which ruling the plaintiff excepted.

*Second Exception.*—After the testimony set out in the foregoing bill of exceptions had been given the defendant to show that the plaintiff's loss claimed to be over $5000 was exaggerated, proved by Claypoole, deputy clerk of the Court of Common Pleas, that in May, 1876, there was issued by himself as clerk, a trader's license to A. Mispelhorn, at No. 91 Hanover street, upon the affidavit then filed in the office of the Clerk of that Court, which affidavit is as follows, to wit:

STATE OF MARYLAND,
  *City of Baltimore, to wit:*
On this first day of May, 187–, personally appears before the subscriber, Clerk of the Court of Common Pleas, Adolph Mispelhorn, 91 Hanover street, and makes oath on the Holy Evangely of Almighty God, that the true amount of goods, wares and merchandise, held by him, at the principal season of sale, as nearly as he can ascertain, does not exceed $1000.

                              I. FREEMAN RASIN,
                                          Clerk.


That said affidavit was taken by witness, as he was able to say from the fact, that the written part was filled up in his own hand-writing; that witness did not know Mispelhorn personally, but knew that the license was issued in that name, as the license book now before him showed, and that the affidavit was made by the person to whom the license was granted. Witness identified the affidavit as having been made in 1876, although it was

not dated, because all the affidavits for traders' licenses of each year are kept in separate files in the office, and witness took the one now produced from the files of 1876, and was able to say positively that it was made in 1876. The plaintiff objected to the admission of said affidavit, but the Court overruled the objection, and allowed the affidavit to be read to the jury ; to which ruling the plaintiff excepted.

*Third Exception.*—After the testimony was all in, the plaintiff offered five prayers; the first and second are stated in the opinion; the others are as follows:

3. That if the jury find that the plaintiff's bills of purchase of goods were destroyed by the fire in question, and that the dealings of the plaintiff in purchasing goods were almost entirely for cash, and that, as a general rule, no accounts are or were kept by the merchants from whom the said plaintiff purchased for cash as aforesaid, then it was impossible for him to gratify the demand of the defendant in reference to said cash purchases.

4. That if the jury find that the plaintiff directed his wife to procure whatever duplicate bills of purchase she could obtain, for the purpose of gratifying the demand of the defendant; and his said wife, after making a reasonable effort to procure said bills, and failing so to procure them, reported her inability to procure the same to the plaintiff; and they further find, that the plaintiff believed that the same could not be procured, and therefore failed to produce such duplicates, then the plaintiff is entitled to recover, notwithstanding the jury may find that there were some bills of purchase, for which duplicates could have been procured.

5. That the bills of purchase and duplicates, referred to in the eighth section of the policy offered in evidence in this case, are bills of purchase and duplicates in support of the claim made ; and if the jury find from the evidence, that the duplicate bills, which were offered in evidence

in this case by the defendant, had no reference to the claim of loss made by the plaintiff, then the plaintiff is entitled to recover, notwithstanding such duplicates were not produced and exhibited to the defendant.

The defendant offered three prayers; the first and second are stated in the opinion; the third it is not necessary to set out.

The Court rejected all the plaintiff's prayers, and granted the first prayer of the defendant. The other prayers of the defendant were conceded by plaintiff. The plaintiff excepted, and the verdict and judgment being for the defendant, the plaintiff appealed.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY, ROBINSON, and IRVING, J.

*W. E. Gleeson* and *Orville Horwitz,* for the appellant.

*Frank P. Clark* and *W. A. Fisher,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

We think there ought to be no doubt of the correctness of the ruling of the Court below as stated in the first exception. The plaintiff himself proved that he had purchased goods of the house of the witness; and the defendant proposed to show, by the testimony of the witness, in connection with the books of his firm, produced in Court, containing entries of sales made to the plaintiff within the time spoken of by the plaintiff in his testimony, that though the witness had no personal knowledge of the sales of the goods charged in the books, and did not himself make the entries, yet the bills had been rendered to the plaintiff and had been paid by him, and that duplicates of the bills could have been obtained by the plaintiff if he had applied for them. The question of importance was as to the ability of the plaintiff to obtain and

furnish to the defendant duplicate bills of purchase under the requirement of the 8th condition of the policy sued on ; and it is difficult to suggest any better or more certain way of proving the fact than was here proposed and sanctioned by the Court.

And the ruling presented in the second exception is equally free from objection. It was proposed to prove by the witness that he, as deputy clerk in the clerk's office of the Court of Common Pleas, in May, 1876, took the affidavit of the plaintiff, upon his application for a trader's license, and the witness produced the license book, and the affidavit, filled up in his hand-writing, upon which the license to trade upon a capital stock of $1000 was issued to the plaintiff for that year. Witness says he did not know the plaintiff personally, but he knows that the license was issued in his name, as the license book shows, and that the affidavit was made by the person to whom the license was granted. He is positive that the affidavit, though without date, was made in May, 1876. It was to the admission of the affidavit that the exception was taken.

By the Code, Art. 56, sec. 43, all applicants for traders' licenses are required to state on oath the amount of their stock of goods; and no person other than the applicant himself can make this oath, except in the cases provided for in section 56 of the same Article. By this latter section, where the applicant resides out of the city or county, or is unable to apply in person, by reason of sickness or bodily infirmity, the application may be made by an agent, and he is authorized to make the affidavit required by the previous section. It is true, there is nothing in the statute to require such affidavit to be preserved as matter of record ; but as a paper or memorandum made contemporaneously with the fact in question, in the course of official or other duty, and sworn to contain a true statement of the fact or transaction as it occurred, by the party in con-

nection with whose testimony it was offered, we think it was clearly admissible. _Insurance Co. vs. Weides_, 14 _Wall._, 380. It was for the jury to say, whether the affidavit was made by the plaintiff, or by his wife as his agent, but whether made by the one or the other it was equally admissible against the plaintiff.

When this case was here on a former appeal (50 _Md._, 180,) the question was to the effect of the letter of the 29th of Jan. 1877, written by the agent of the defendant to the attorney of the plaintiff. It was then contended by the plaintiff that that letter operated as a waiver of all further proof of loss and the extent thereof. The Court below had so decided, but this Court thought differently and reversed the judgment and remanded the case for a new trial. In passing upon the first prayer of the defendant, as to the proper construction of the 8th condition of the policy, and which had been rejected by the Court below, this Court, while approving of the construction placed upon the condition by the defendant, held that the prayer was properly rejected, because it took from the jury the right to find, upon the evidence before them, whether the condition had been complied with, as far as it was in the power of the plaintiff so to do. This Court then thought there were some circumstances before the jury reflecting upon the question of the inability of the plaintiff to gratify the demand for duplicates of his bills of purchase; and that being the case, the prayer should not have sought to take from the jury that question.

Upon the re-trial of the case, the verdict of the jury was rendered for the defendant; and whether it was rendered under the first or the second of the prayers granted as instructions, at the instance of the defendant, it would seem to be conclusive of the case.

By the first of these prayers, the jury were instructed that if they should find that demand had been made of

the plaintiff, at any time from the 8th to the 11th of December, 1876, for the production of his bills of purchase, or duplicates thereof, covering the time during which he had stated that his stock on hand at the time of the fire had been purchased, then, under the 8th condition of the policy, the burden of proof was on the plaintiff to show that it was not in his power to produce such bills, or duplicates thereof; and if the jury should find that it was in his power to produce duplicates of such bills of purchase, or such of them as were produced before the jury by the defendant, then the plaintiff was not entitled to recover. It thus appears that the question, which this Court, on the former appeal, said was proper to be submitted to the jury, was fully and fairly submitted to them on the second trial.

By the second instruction given, the jury were directed that if they should find that the plaintiff had been guilty of any misrepresentation or concealment, or of any fraud or false swearing, for the purpose of making or enlarging his claim for loss against the defendant, he was not entitled to recover. This instruction was conceded by the plaintiff; and the only instructions given, affecting the right of the plaintiff to recover, were the two just stated, given at the instance of the defendant.

In order to avoid the operation of the 8th condition of the policy, under which the first instruction on the part of the defendant was given, the plaintiff sought an instruction to the effect, that if the jury should find that the agent of the defendant, in November, 1876, offered on behalf of the defendant to pay the plaintiff, in settlement of his loss, the sum of $2400, which was agreed to be accepted by the plaintiff, then such offer and acceptance operated as a waiver, on the part of the defendant, of any further proof of loss than had before that time been presented.

This prayer was refused, and we think properly so.  It omitted all reference to the authority of the agent to make the offer of adjustment.   Whether the agent could, in view of the terms of the 9th condition of the policy, without express authority in writing, do any act to operate as a waiver of the performance of the terms and conditions of the policy, is a question that we need not decide.   If an agent has authority to issue and deliver policies of insurance, he is presumed to possess power to adjust all losses under such policies, and to use all reasonable means to effect such adjustment.  *Richardson vs. Anderson*, 1 *Camp.*, 43, note.  But what the agent in this case was authorized to do; whether he in fact had authority, or whether he was held out and allowed to act, as though he possessed such authority, or that the defendant was, for any sufficient reason, to believe that the agent was authorized to make the offer, and thus to stop all further investigation into the extent of the loss, are facts wholly omitted from the proposed instruction.   This omission, to say nothing of any other objection to the prayer, was fatal to it, and it was therefore properly refused.

The second prayer offered for instruction was, that if the jury should find that the fire occurred on the 20th of October, 1876; that the defendant was duly notified thereof; that proof of loss was furnished November 24th, 1876, and that the defendant did not, *within a reasonable time*, reject such proofs of loss, and notify the plaintiff that additional proofs were required, and amongst other things, duplicate bills of purchase, then the defendant had waived any objections to such proof, or right to defend for any want of additional proof.

This proposition had special reference to the right of the defendant to demand of the plaintiff the production of his bills of purchase, or duplicates thereof, in support of his claim for loss, under the 8th condition of the policy; and it proposed to submit to the jury, as matter of fact to

be determined by them, what was the reasonable time within which the defendant was required to make known its dissatisfaction with the proofs furnished, and to demand the production of the bills of purchase, or duplicates thereof, under the 8th condition of the policy. But this was not a question of fact to be submitted to the jury; it was a question of law, involved in the legal construction of the policy; and it was. therefore for the Court to determine, upon facts to be found by the jury, whether the demand for the bills or duplicates was made within a reasonable time or not. *Ragan vs. Gaither*, 11 *G. & J.*, 472, 490. The case of the *Insurance Co. vs. Weides*, 14 *Wall.*, 375, was an action on a fire policy containing a condition almost exactly similar to the 8th condition of the policy before us, and the defendant sought to defeat the right of action because of the non-compliance with the condition by the plaintiff. That attempt, however, failed, and the Supreme Court, in giving their reasons for the conclusion at which they arrived, say: "The bills of exception state that there was evidence tending to show that the plaintiffs were requested to produce duplicate bills of purchases, but there does not appear to have been any evidence when the request was made, whether before the commencement of the action or afterwards, or whether there was neglect or refusal of the plaintiff to comply." And they held, that the instruction asked for was properly refused. It would appear from the manner of considering the subject that the question was regarded by the Court as solely one of law, as they required the bill of exception to present evidence to enable them to see whether the demand was made in proper time.

There is nothing in either of the remaining three prayers, refused by the Court, that can entitle the plaintiff to a reversal of the judgment. Whether it was possible or impossible for the plaintiff to produce duplicate bills of purchase, was purely a question of fact to be determined by the jury from all the evidence before them;

and though it might be found that it was impossible to produce duplicate bills of purchase of a certain class, that fact did not excuse the non-production of those that could have been obtained by a *bona fide* effort on his part. The plaintiff could not be relieved from the duty imposed upon him by his contract, by simply sending out his wife to procure duplicate bills from parties with whom she had been in the habit of dealing; nor could he meet the requirement of the condition in the policy, by showing that he supposed or believed that duplicate bills could not be obtained. The burden of proof was upon him to show that it was not possible for him to comply with the terms of the condition, by the use of all reasonable means within his power; and that some of the duplicate bills, at least, were producible by him was shown by their production in Court from parties to whom the plaintiff had never applied to be furnished with such bills.

The object of the 8th condition of the policy is protection to the insurance company, as furnishing the mode and means whereby the ordinary proofs of loss may be scrutinized and their accuracy tested. This is done by showing the quantities and character of goods purchased within a given time before the fire, as compared with the quantities and character of the goods sold within that period. Upon this comparison, with a knowledge of the amount of stock on hand at the commencement of the period, and the amount and nature of the goods claimed to have been lost by the fire, the insurer is enabled to determine, with some degree of certainty, whether the claim for loss is fair or otherwise. In this view of the object and purpose of the condition, the last prayer on the part of the plaintiff was clearly erroneous, and was therefore properly refused.

Upon review of the whole case we find no ground for a reversal of the judgment, and it must therefore be affirmed.

*Judgment affirmed.*