## ANNA ENGSTROM v. FARMERS & BANKERS LIFE INSURANCE COMPANY.[1]

February 24, 1950.

No. 34,993.

[1]Reported in 41 N. W. (2d) 422.

*Richard H. Hastings* and *Gillette, Nye, Montague, Sullivan & Atmore,* for appellant.

*Smythe & Lindquist,* for respondent.

KNUTSON, JUSTICE.

On December 16, 1931, defendant issued its life insurance policy on the life of Charles V. Engstrom, then aged 25 years, for the principal sum of $1,000. Annexed thereto was a supplemental contract, commonly called a "Double Indemnity" agreement, wherein it was agreed that $2,000 would be paid in lieu of the face amount of the policy in the event the death of the insured should occur as a result, directly and independently of all other causes, of bodily injury effected directly through external, violent, and accidental means. Anna Engstrom, wife of the insured and plaintiff in this action, was designated as the beneficiary in the policy.

The double indemnity contract, so far as here pertinent, contains the following forfeiture clause:

"The Double Indemnity benefit * * * shall automatically terminate * * * upon the event that the Insured engage in Military or Naval service in time of war * * *."

At the time of the issuance of the policy, insured was a chauffeur and later became a police officer in the city of Duluth. He became a member of the National Guard. In February 1941, insured, as a member of the National Guard, was inducted into military service. He had lived with his family up to that time.

For a time after insured's entry into military service, plaintiff received money from her husband for her support. He then ceased remitting, and later plaintiff was granted an allotment by the government, which she continued to receive during his service in the army and for some time thereafter until December 1947. She did not hear from him from the time he entered military service except for the support money which he sent her.

In December 1947, plaintiff enlisted the help of an attorney in trying to locate her husband, and it was then found that he had met an accidental death in Texas in December 1945 and that he had been discharged from the army in June 1943. Defendant was notified of his death, and a claim was made under the policy for payment on account of accidental death. It appears that the first information defendant had of the death of insured was contained in a letter written at the request of plaintiff, dated January 12, 1948, and ostensibly received shortly thereafter. Immediately upon receipt of this letter, defendant started its investigation into the death of insured, and on January 23, 1948, received at its office a report from the Retail Credit Company disclosing that insured had been in the military service. Ten days later, on February 2, 1948, defendant received a further report from the Retail Credit Company again advising defendant that insured had been in the military service. On the same day, defendant received the proof-of-death blanks from plaintiff or her attorney, wherein information also disclosed that insured had been in the military service. On the next day, February 3, the claim was processed for payment by

noting on the proof of death the letters "O. K. for D. I.," which meant approved for double indemnity payment. Such approval was endorsed and subscribed to by Emmet A. Blaes, one of defendant's counsel, and by John L. Evans, defendant's medical director. The claim was approved by Clarence A. Swallow, who as assistant secretary, acting in the capacity of chief underwriter and personnel and office manager of defendant, issued the draft for payment.

On February 20, 1948, defendant mailed to the Bank of Commerce & Savings of Duluth, Minnesota, its draft for $2,077.49, payable to the order of plaintiff, representing the full amount of the claim of $2,000 and the premiums which had been paid on the policy subsequent to the death of insured, which were rebated. On February 23, 1948, defendant sent a telegram to the bank countermanding the payment and instructing the bank to withhold delivery and to return the draft to defendant. Thereafter, on February 26, 1948, defendant mailed the bank its draft, payable to the order of plaintiff, for $1,101.46 in lieu of the draft which had previously been forwarded. This draft represented the face amount of the policy of $1,000, plus the insurance premiums that had been paid after the death of insured and also the premiums that had been paid for the double indemnity agreement after insured's entry into the military service.

The case was tried to a jury and resulted in a verdict for plaintiff for the full amount of her claim. Thereafter, an alternative motion for judgment notwithstanding the verdict or a new trial was denied by the court, and this appeal followed.

The principal question presented by this appeal is whether defendant waived its right to forfeiture after learning that insured had been in the military service.

The definition of a waiver most commonly accepted is that it is a voluntary relinquishment of a known right. State v. Tupa, 194 Minn. 488, 260 N. W. 875, 99 A. L. R. 147; Thompson Lbr. Co. v. Gruesner, 177 Minn. 111, 224 N. W. 849; 6 Dunnell, Dig. & Supp. § 10134. Both intent and knowledge, actual or constructive, are

essential elements. Farnum v. Peterson-Biddick Co. 182 Minn. 338, 234 N. W. 646; Clark v. Dye, 158 Minn. 217, 197 N. W. 209.

In S. & E. Motor Hire Corp. v. N. Y. Ind. Co. 255 N. Y. 69, 73, 174 N. E. 65, 66, 81 A. L. R. 1318, the court said with respect to knowledge where an insurer has available facts which should ordinarily put it upon inquiry before it acts:

"* * * Where a person is under a duty to inquire before he takes action, he may be said to be under a 'bounden duty to know' those facts which a reasonable inquiry would disclose. Reference to where a fact can be ascertained may *in such case* be 'equally effective as a notice' of the fact itself."

▆▆ No consideration is required to support a waiver. Clark v. Dye, *supra*. Where a party intentionally relinquishes a known right by waiver, he cannot, without consent of his adversary, reclaim it. 56 Am. Jur., Waiver, § 24; Gilbert v. Globe & Rutgers F. Ins. Co. 91 Or. 59, 174 P. 1161, 3 A. L. R. 205. A waiver, once established, is irrevocable even in the absence of any consideration therefor. U. S. F. & G. Co. v. Miller, 237 Ky. 43, 34 S. W. (2d) 938, 76 A. L. R. 12; Lee v. Casualty Co. of America, 90 Conn. 202, 96 A. 952; 56 Am. Jur., Waiver, § 24.

▆ The question of waiver is largely one of intention. It need not be proved by express declaration or agreement, but may be inferred from acts and conduct not expressly waiving the right. Pruka v. Maroushek, 182 Minn. 421, 234 N. W. 641; Farnum v. Peterson-Biddick Co. 182 Minn. 338, 234 N. W. 646, *supra*.

▆ Waiver is ordinarily a question of fact for the jury. When only one inference can be drawn from the facts, the question becomes one of law, but where different inferences may be drawn the question is one of fact for the jury. Minneapolis Elec. Lamp Co. v. Federal Holding Co. 175 Minn. 421, 221 N. W. 645; Doujotos v. Leventhal, 271 Mass. 280, 171 N. E. 445, 69 A. L. R. 1080.

▆ Waiver and estoppel are often confused, but they are not convertible terms. An estoppel may exist when there is also a waiver, but waiver may be established even though the acts, con-

duct, or declarations are insufficient to establish an estoppel. Mee v. Bankers' L. Assn. 69 Minn. 210, 72 N. W. 74; Bowman v. Surety Fund L. Ins. Co. 149 Minn. 118, 182 N. W. 991.

Following the distinction pointed out in the Mee case, we said in Parsons, Rich & Co. v. Lane, 97 Minn. 98, 106, 106 N. W. 485, 488, 4 L.R.A.(N.S.) 231, 7 Ann. Cas. 1144:

"This court has always recognized the distinction between waiver and estoppel, and holds that a waiver need not be based either upon a new agreement or an estoppel. Thus in Mee v. Bankers' Life Assn., 69 Minn. 210, 72 N. W. 74, it was said: 'The law seems to be well settled, and has frequently been acted upon, that if, in negotiations or transactions with the assured after knowledge of the forfeiture, the insurer recognizes the continued validity of the policy or does acts based thereon, the forfeiture is, as a matter of law, waived, and such a waiver need not be based on any new agreement or an estoppel.' Justice Collins also quotes with approval the following language from Queen v. Young, 86 Ala. 424, 5 South. 116, 11 Am. St. Rep. 51: 'Though the waiver may be in the nature of an estoppel and maintained on similar principles, they are not convertible terms. The courts, not favoring forfeitures, are usually inclined to take hold of any circumstances which indicate an election to waive a forfeiture. A waiver may be created by acts, conduct, or declarations insufficient to create a technical estoppel.' "

■ In this case, there is no evidence to establish an estoppel. The determinative question is whether the evidence sustains the jury's finding of waiver. Applying the above rules to the established facts, we believe that the jury could find that defendant had full information regarding the insured's military service on February 2, 1948; that on February 3 it waived the forfeiture, which could have been relied upon, and approved the claim for payment; and that on February 20, pursuant to such approval, defendant issued its draft in payment of the claim and transmitted

it to the bank at Duluth for delivery. Having waived the forfeiture, defendant could not thereafter revoke its action in so doing.

It is significant that insured did not die while in the military service. The accident which caused his death was in no way connected with his military service and occurred long after his severance therefrom. The jury could well believe that this fact was one of the underlying reasons for waiving the forfeiture.

■ Defendant assigns as error portions of the court's instructions and lays particular stress on the following instruction:

"* * * Did the defendant carelessly or negligently overlook the military service of the deceased in time of war, or did the defendant intentionally overlook and purposely disregard the military service of the deceased in time of war?"

Defendant seeks to construe this as an instruction that if defendant carelessly or negligently overlooked the military service of insured in time of war plaintiff would be entitled to a verdict. Reading the instruction as a whole, we do not so construe it, nor do we believe that the jury would do so. Preceding the objectional instruction, the court said:

"The plaintiff contends that these exhibits, or at least some of them, show that defendant was fully informed of the military service of the deceased. Defendant denies that it had any such knowledge or received any such knowledge. Plaintiff contends that the defendant, with knowledge of that military service upon the part of the deceased, waived a forfeiture of the policy. The defendant denies that it waived any forfeiture of the policy."

In another portion of its instruction the court said:

"* * * there can be no waiver unless knowledge that the insured had entered the military service in time of war was brought home to the defendant or to those who, in a legal sense, represented the defendant, and, possessing such knowledge some act was done or some position assumed which indicated an intention to consider the contract of insurance as still in full force and effect."

The instruction complained of merely presented to the jury two alternatives. If it found one to be true, plaintiff was not to recover. If it found the other to be the fact, plaintiff could recover. Reading the instructions as a whole, we believe that they adequately presented the issue of waiver.

Affirmed.

Mr. Chief Justice Loring, being absent because of attendance upon the pardon board, took no part in the consideration or decision of this case.

---

[1]Reported in 41 N. W. (2d) 433.