## JOHN H. WRIGHT v. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION.

81 N. W. (2d) 610.

February 21, 1957—No. 36,868.

*Bauers, Pratt, Cragg & Barnett,* for appellant.
*Ray G. Moonan* and *Harry E. Ryan,* for respondent.

MURPHY, JUDGE.

Plaintiff, John H. Wright, was insured under a health and accident policy by the defendant insurance company. On January 25, 1952, as the result of an accident, the plaintiff sustained a heart injury. He was hospitalized from January 27 to March 4, 1952. Even after the plaintiff's heart condition had returned to normal, he suffered from a nervous and emotional disturbance which was caused by the injury to his heart and which prevented him from resuming the duties which his occupation of theater owner entailed.

A report of disability form was sent by the plaintiff to the defendant insurance company in June of 1952. This notice was incomplete due to the lack of a medical report. Additional medical information

was required and it was supplied to the company on August 8, 1952. There followed correspondence and interviews with reference to the liability of the company. The question was raised as to whether the accident or illness provisions of the policy applied. The company first suggested a settlement in the sum of $783.33 and later attempted to dispose of their liability on the basis of a $1,300 payment. The plaintiff refused these proposals and finally after more negotiations the company paid under the accident provisions of the policy for disability up to November 26, 1952, on the basis of $200 per month.

The insurance company did not make subsequent monthly payments. On September 22, 1953, the plaintiff sent to the company a further proof of loss stating that he had resumed partial activity as of August 1, 1953, and full-time work as of September 15, 1953. The company sent to the plaintiff a check covering payments for total disability to August 1, 1953. On November 9, 1953, the plaintiff returned this check with a letter requesting that payment for his partial disability from August 1 to September 15 be included in the check. The letter also stated that he "believed" that this would be a satisfactory settlement of his claim. The insurance company then sent the plaintiff a check dated November 13, 1953, which covered everything the plaintiff had claimed. The plaintiff did not cash this check, however, because it contained a form of final release. It appears from the record that, when the plaintiff sent in the last report saying that he "believed" the settlement would be satisfactory, he did so under the mistaken impression that he would in fact be able to resume work.

According to the uncontradicted testimony of the plaintiff and his doctor, the plaintiff had not in fact been able to return to his work in August or September of 1953 due to the recurrence of his emotional and nervous upsets. Being under the impression that he would be able to resume work shortly, as his physician had advised him, the plaintiff decided that he would rather accept a lower payment than continue his "bickering" with the insurance company over a few extra weeks of disability. However, by the time the check for $1,780 was received by the plaintiff, the doctor had told him that he

had been entirely mistaken in his previous prognosis and that the plaintiff would not be able to work for some time. The plaintiff held the check without cashing it and without advising the insurance company of the error in the September report as to the extent of his disability. The insurance company made no inquiry of the plaintiff as to why the cancelled check, which included a provision as to release of liability, was not returned to it.

The plaintiff remained disabled until February 15, 1955, when he finally was able to resume work. On June 4, 1955, he instituted this action against the defendant insurance company to recover total disability payments for the period from November 26, 1952, to February 15, 1955, which he claims were due. The case was tried to a jury which found for the plaintiff, awarding him the sum of $5,300. The defendant moved for a judgment notwithstanding the verdict, or in the alternative for a judgment notwithstanding the verdict except as to the sum of $1,780, or in the alternative for a new trial on all issues. The trial court denied all of these motions, and the defendant appealed from this order.

The defendant contends that there is no evidentiary support in the record that proper proof of loss was ever supplied to the defendant for the period from September 22, 1953, to February 15, 1955. It also contends that there is no evidence in the record of any conduct on the part of the defendant which might constitute waiver of such notice.

Some further observations should be made with reference to the conduct of the parties leading up to the issuance of the $1,780 check and release. At the outset, it should be observed that no question is raised as to the fact that plaintiff was totally and permanently disabled within the terms of the policy for the period in question. Nor does the defendant contend that at any time during the pendency of the claim did the plaintiff fail to cooperate in submitting to medical examinations or in failing to make available to the insurance company information and records of physicians and hospitals with reference to his confinements and treatments. It does not appear that either party strictly adhered to the letter of the policy in their

negotiations. The plaintiff points out that monthly payments were not made as required by the agreement and, on the other hand, the insurance company complained that the plaintiff was not "under the professional care and regular attendance *at least once a week* of a licensed physician or surgeon," and in their letter to the plaintiff of August 20, 1952, stated:

"* * * However, as you have been a prized policyholder, we feel that providing you sign the release which we are enclosing, we can allow in addition to the disability which you sustained during January, February and March, the maximum benefits allowable for non-confinement or for 90 days. The benefits which we will be able to allow will amount to $783.33 and if you will sign the enclosed release and return it to us, we will then forward to you our draft for the benefits allowable.

"We are asking you to sign the enclosed release as we are making an exception on your behalf. If the release is not signed, Mr. Wright, instead of 90 days, we will have to limit the nonconfining benefits to 21 days or 7 days for each medical treatment which you received after your hospitalization."

After the first notice of claim was furnished, numerous conferences followed between the plaintiff and representatives of the defendant company. It is apparent from the record that rather than make the monthly payments, as provided by the policy, the company sought to dispose of the claim on the basis of a lump-sum settlement. It is apparent from the record that at these conferences the representatives of the company tentatively conceded limited liability, suggested compromises, and were indefinite in their proposals. It is further apparent that these meetings were inconclusive and the plaintiff was left in doubt as to whether the defendant considered his claim valid and whether it would be futile to attempt collection without suit. He testified as to his conversation with the agents of the company:

"A. He didn't think they ought to be liable for all the expenses, or all the indemnities, or all the monthly benefits that I had, and

he wanted me at that particular time—it amounted to somewhere around two thousand dollars—and he wanted to pay me, I think, thirteen hundred dollars, and I told him, 'No,' I said, 'I am not in condition to argue or talk to you about it at all. If you don't want to pay me what is due me under the policy,' I said, 'that is all I have asked for.' I said, 'I kept writing you, asking you for the monthly payments on the thing, but nothing has been done, and,' I said, 'if you don't want to do that, just forget about it, and when I am well enough we will ask my attorney to look at it and see what can be done.'"

And then on cross-examination he testified:

"A. There had been a number of contacts, a number of telephone calls, and considerable bickering about getting the thing activated, * * * and they came and sent a man up here by plane from Omaha and offered me a settlement much less than was due under the policy, which I refused, and I told him, 'Forget it. I will let my attorney worry about it when I get well. I can't argue about it.' A few days later, or a month later I guess it was, they sent a check in the mail for the amount that was due up to that time."

The insurance policy involved in this case contains certain provisions, as required by M. S. A. 62.03 (7), providing that the insured must furnish proof of loss to the insurer within 90 days after the termination of the period for which the insurer is liable. Section 62.03 (14) provides that the insured cannot bring an action to recover on the policy prior to the expiration of 60 days after proof of loss has been submitted to the insurer. There is no evidence in the record that a proof of loss was submitted after September 22, 1953.

■ Where a defendant insurance company claimed that under the provisions of its policy, proof of loss had to be furnished every 60 days, this court pointed out in Short v. Great Northern Life Ins. Co. 179 Minn. 19, 23, 228 N. W. 440, 441, that:

"* * * The purpose of a proof of loss is to furnish information from which the insurer may determine whether it has a liability. * * * In a case of this character where it is directed at the occur-

rence of an accident within the policy, it would seem that the statutory provision in the policy by virtue of * * * [M. S. A. 62.03(10)] requires but one proof of loss."

The purpose of a proof of loss is to advise the insurer of the essential facts upon which its liability depends. We held in Rein v. New York Life Ins. Co. 210 Minn. 435, 443, 299 N. W. 385, 389:

"The purpose of requiring the prompt furnishing of proof of loss under any policy of insurance is to provide the insurer with such information as to permit it to investigate the facts and determine whether there is liability on its part. Wold v. State Mut. L. Assur. Co. 198 Minn. 451, 270 N. W. 150."

An insurance company may not arbitrarily demand any particular form of proof of loss and is not the sole judge of its sufficiency. Schoeman v. Loyal Protective Life Ins. Co. 239 Iowa 664, 670, 32 N. W. (2d) 212, 215; Annotation, 109 A. L. R. 825, 826. Once an effective notice of claim has been filed, an insurance company is charged with notice of an existing demand under the terms of its contract, which notice continues until liability ceases.

We have held that there may be an express or an implied waiver of proof of loss. Reliance Motor Co. v. St. Paul F. & M. Ins. Co. 165 Minn. 442, 206 N. W. 655. We have also held that waiver of proof of loss is a fact question, except where but one inference may be drawn from such facts, and "It need not be proved by express declaration or agreement, but may be inferred from acts and conduct not expressly waiving the right." Engstrom v. Farmers & Bankers Life Ins. Co. 230 Minn. 308, 312, 41 N. W. (2d) 422, 424.

It has been held that evasive and dilatory conduct on the part of an insurance company amounting to neither an absolute denial nor recognitition of liability may constitute a waiver of proof of loss. Schoeman v. Loyal Protective Life Ins. Co. *supra.*

In this case, plaintiff signed a medical release and gave it to an agent of the insurance company in 1952 so that it had free access to all the medical reports and information concerning the plaintiff at any time. The defendant must be assumed to have known that

there was no final settlement in this case because the plaintiff did not cash the check which contained the release. The defendant waited until January of 1955 to inquire of plaintiff why he had not cashed the check. It could very easily have contacted the plaintiff or his doctor and discovered that the plaintiff was still totally disabled. Short v. Great Northern Life Ins. Co. *supra;* Schoeman v. Loyal Protective Life Ins. Co. *supra.* It seems to us that the conduct of the insurance company in neglecting to investigate the plaintiff's situation for 14 months, even though it was on notice that there was no settlement due to the failure of the plaintiff to cash the check, was such as to allow a jury to find that it constituted a waiver of the requirement of submitting proofs of loss.

■ The jury was instructed that, if it found that plaintiff had not submitted the proper proof of loss, and the defendant had not waived this requirement, it must find for the defendant. The jury resolved this fact question in favor of the plaintiff. We indicated in Short v. Great Northern Life Ins. Co. *supra,* that under the statutory provision, § 62.03 (10), but one proof of loss is required. But giving the defendant the benefit of its own construction, it satisfactorily appears from the evidence that the defendant had knowledge of the existence of plaintiff's claim and full opportunity to verify it, and from the course of conduct of the defendant throughout the negotiations for settlement, there was sufficient evidence for the jury to find that the defendant had waived further requirement of notice. Engstrom v. Farmers & Bankers Life Ins. Co. 230 Minn. 308, 41 N. W. (2d) 422.

■ At the trial of this action the court denied the defendant's motion to amend its answer so as to allege as an affirmative defense that proof of loss had not been filed in accordance with standard provision 14 of the policy. It is our view that the instruction referred to in the foregoing paragraph corrected any error the trial court may have made by refusing to allow the defendant to amend at the end of the trial.

Affirmed.