718 A.2d 693

Herbert HIMELFARB et al.

v.

The HARTFORD FIRE INSURANCE COMPANY.

No. 61, Sept. Term, 1998.

Court of Special Appeals of Maryland.

Oct. 5, 1998.

Benjamin A. Klopman (M. Michael Cramer and Cramer & Klopman, Chartered, on the brief), Rockville, for appellants.

George E. Reede, Jr. (Donald L. Speidel, V. Timothy Bambrick and Niles, Barton & Wilmer, on the brief), Baltimore, for appellee.

Argued before HOLLANDER and EYLER, JJ., and JAMES S. GETTY, Judge (retired, Specially Assigned).

EYLER, Judge.

The issue in this case is whether Herbert and Frances Himelfarb ("Himelfarbs"), appellants, complied with a proof of loss provision in an insurance policy issued by The Hartford Fire Insurance Company ("Hartford"), appellee. On appeal, the Himelfarbs challenge an order of the Circuit Court for Baltimore City granting Hartford's motion for summary judgment on the basis that the Himelfarbs had not submitted a complete proof of loss to Hartford within sixty days of Hartford's request for information, as required by the policy. We hold that the Himelfarbs succeeded in creating a genuine dispute of material fact on this issue, and thus, the trial court erred in granting summary judgment. Consequently, we reverse and remand for further proceedings.

## Fact Background

The following information is taken from the affidavits and documents filed by the Himelfarbs in opposition to Hartford's motion for summary judgment. At all relevant times, the Himelfarbs owned a commercial warehouse located at 1327 Bayard Street in Baltimore, Maryland. On April 29, 1992, the Himelfarbs leased a portion of the warehouse to Baltimore Woodworks, Inc. ("Baltimore Woodworks"). As part of the transaction, the Himelfarbs loaned $100,000 to Baltimore Woodworks as a tenant equipment and improvement allowance and retained a security interest in the property that Baltimore Woodworks purchased with the proceeds of the loan.

Baltimore Woodworks failed to make several of its rental payments, thereby defaulting under the terms of its lease. Consequently, in the Spring of 1994, the Himelfarbs instituted

bankruptcy proceedings against Baltimore Woodworks and, at the beginning of the bankruptcy proceedings, performed an inventory of the equipment and material that remained on the premises.[1]

In November, 1994, some of the equipment and material belonging to Baltimore Woodworks, which was subject to the Himelfarbs' security interest, was stolen from the warehouse. In late 1994 or early 1995, shortly after the Himelfarbs learned of the theft, Frances Himelfarb reported the loss to Ivan Brendler ("Brendler") of the Brendler Insurance Agency, from whom the Himelfarbs purchased their Hartford insurance policy. Frances informed Brendler that she would not know the extent of the theft loss until she received the information from the bankruptcy auction of the remaining property. On February 8, 1995, the bankruptcy trustee auctioned off the remaining equipment and material belonging to Baltimore Woodworks.

On June 5, 1995, the Himelfarbs notified Hartford of the loss. Thereafter, they retained the services of Harvey Goodman of The Goodman–Gable–Gould Company, adjusters, to (1) investigate the theft, (2) determine the extent of their loss, and (3) pursue their claim with Hartford.

The policy issued by Hartford contained various first party and liability coverages, including coverage for theft of property in which the Himelfarbs had a security interest. On October 2, 1995, Hartford requested that the Himelfarbs submit a proof of loss within sixty days. Goodman prepared a "proof of loss," utilizing a Hartford printed form, and submitted a signed and sworn copy to Hartford on November 28, 1995. Although the proof of loss asserted the theft of property on November 1, 1994, and contained the information available to the Himelfarbs up until that time, it did not indicate the cost of repair, replacement, or actual cash value of the

---

1. In July, 1994, the Himelfarbs entered into a month-to-month tenancy for a portion of the warehouse with Clarence M. Mitchell, III t/a System Configuration & Maintenance Corporation. Mitchell also failed to pay rent, and he abandoned the property in November, 1994.

stolen items. Instead, the proof of loss noted that those terms were "to be determined."

On November 30, 1995, Hartford wrote a letter to the Himelfarbs noting its dissatisfaction with the proof of loss and demanding that the Himelfarbs provide it with supplemental information no later than December 4, 1995, or else risk denial of their claim. On December 4, 1995, Goodman wrote a letter to Hartford's counsel stating that "[a]ll available information requested for the Hartford's investigation has been provided independently of the Proof." On December 11, 1995, Hartford denied the Himelfarbs' claim on the basis that they (1) did not provide prompt notice of the loss, (2) failed to submit an adequate proof of loss, and (3) failed to demonstrate any insurable interest.[2]

On April 25, 1996, after numerous telephone calls and letters, Goodman obtained the information with respect to the items sold at the bankruptcy auction in February, 1995. Shortly thereafter, Goodman finished his investigation and, on June 6, 1996, forwarded a formal estimate of loss. In order to prepare the formal estimate of loss, Goodman needed information on the items sold at the bankruptcy auction so that he could compare that information to the inventory of the property taken at the beginning of the bankruptcy proceedings. This information was included with the June 6, 1996 packet. The inference relied on by Goodman and the Himelfarbs was that the items that were not sold at the auction, but which were on the original inventory list, were the items that had been stolen in November, 1994. Hartford and Goodman exchanged correspondence in August and September, 1996, confirming the date of loss as November 19, 1994, and not November 1, 1994, as originally reported. In a letter dated December 6, 1996, Hartford once again denied the Himelfarbs' claim on the ground that, to the extent pertinent here, the proof of loss was inadequate.

---

2. The "notice" and "insurable interest" issues are not before us on this appeal.

On February 26, 1997, the Himelfarbs filed a complaint against Hartford in the Circuit Court for Baltimore City seeking to recover their loss. On July 14, 1997, Hartford filed its motion for summary judgment and a hearing on the motion was held on October 20, 1997. The trial court held that the Himelfarbs failed to file a timely proof of loss, which was a material breach of the policy, and granted Hartford's motion.[3] This appeal followed. For the reasons that follow, we reverse.

## QUESTION PRESENTED

On appeal, the Himelfarbs present two questions for our review, which we have rephrased and combined into one question as follows:

Did the Himelfarbs as a matter of law fail to file a timely and adequate proof of loss, thereby breaching the insurance policy, precluding recovery?

## STANDARD OF REVIEW

Appellate review of summary judgment is governed by Maryland Rule 2–501(e). Summary judgment is proper if "there is no genuine dispute as to any material fact and . . . the party in whose favor judgment is entered is entitled to judgment as a matter of law." Rule 2–501(e). "In determining whether a party is entitled to judgment under this rule, the court must view the facts, including all inferences, in the light most favorable to the opposing party." *Baltimore Gas & Electric Co. v. Lane*, 338 Md. 34, 43, 656 A.2d 307 (1995); *see also Beatty v. Trailmaster Products, Inc.*, 330 Md. 726, 739, 625 A.2d 1005 (1993). The role of the trial court is to decide issues of law and not to resolve disputed issues of fact. *DeBusk v. Johns Hopkins Hosp.*, 105 Md.App. 96, 102, 658

---

**3.** The transcript of the hearing indicates that the trial court may have perceived the Himelfarbs' argument as one of conceding that they had breached the proof of loss provision in the policy but arguing that the breach was immaterial. Our review indicates that their position was that they had complied with the policy provision, not that their action constituted an immaterial breach.

A.2d 1147 (1995). Summary judgment proceedings are not intended as a substitute for trial. *General Accident Ins. Co. v. Scott,* 107 Md.App. 603, 611, 669 A.2d 773 (1996). Upon review of summary judgment matters, an appellate court determines whether the trial court was legally correct. *De Busk,* 105 Md.App. at 102, 658 A.2d 1147.

## DISCUSSION

On appeal, the Himelfarbs contend that the trial court could not, as a matter of law, find that they failed to abide by the terms and conditions of the insurance policy. They argue that determining whether their proof of loss met the requirements of the policy was a factual issue to be submitted to a fact finder at trial. In addition, the Himelfarbs contend that, absent prejudice to Hartford, they should not be precluded from recovering on their claim because of an unavoidable delay in submitting a formal estimate of loss.

Hartford disagrees and argues that summary judgment was appropriate because the Himelfarbs failed to abide by the following insurance policy provision:

3. **Duties In The Event Of Loss Or Damage**

 a. You must see that the following are done in the event of loss or damage to Covered Property:

 \* \* \* \* \* \*

 (7) Send us a signed, sworn proof [4] of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

Hartford contends that the information submitted in the proof of loss on November 28, 1995, was insufficient to enable Hartford to investigate the Himelfarbs' claim and, as such, precludes the Himelfarbs from recovering under the policy.

---

**4.** The printed proof of loss form supplied by Hartford and utilized by the insured in this case was not a part of the policy. Consequently, it is impossible to discern from the policy what information would have to be included in a proof of loss in order to satisfy this provision.

Hartford also argues that it need not establish actual prejudice in order to deny a claim when an insured fails to abide by an express policy provision.

Hartford's latter contention is correct. Although several states require an insurer to demonstrate actual prejudice before denying a claim on the basis of failure to comply with a policy provision requiring a proof of loss, Maryland is not one of those states. Generally, an insurer need not establish actual prejudice in order to deny a first party coverage claim for a breach of a policy provision requiring a proof of loss. *See* Md.Code Ann., Ins. § 19–111 (1997) (With respect to a property loss claim resulting from fire or a hazard under an extended coverage endorsement, an insured may be prevented from recovering under a policy if the insured fails to provide the sworn proof of loss required by the policy. The statute does not require the insurer to show actual prejudice.); *Government Employees Ins. Co. v. Harvey,* 278 Md. 548, 554, 366 A.2d 13 (1976). This is to be distinguished, however, from breach of a provision in a liability policy requiring prompt *notice. See General Acc. Ins. Co. v. Scott,* 107 Md.App. 603, 669 A.2d 773 (1996), and Md.Code Ann., Ins., § 19–110 (1997) (If insurer seeks to disclaim coverage on any policy of liability insurance on the ground of failure to give requisite notice, insurer must establish actual prejudice). The requirements of notice and proof of loss contained in insurance policies are two different things. A requirement that a proof of loss be submitted is a requirement of the contract that must be complied with unless waived. *Harvey,* 278 Md. at 553–54, 366 A.2d 13. Nevertheless, as explained below, Hartford was not entitled to summary judgment on the basis that the Himelfarbs breached the proof of loss provision.

In Maryland, as in other jurisdictions, it has long been held that proofs of loss exclusively benefit insurance companies and enable them to ascertain the nature, extent, and character of the loss at issue. *Harvey,* 278 Md. at 553, 366 A.2d 13; *Fidelity & Cas. Co. v. Dulany,* 123 Md. 486, 494, 91 A. 574 (1914). *See also Schoeman v. Loyal Protective Life Ins. Co.,* 239 Iowa 664, 32 N.W.2d 212, 215 (1948)(the "function of

proofs of loss is to advise the insurer of the essential facts upon which its liability depends"); *Wright v. Mut. Benefit Health & Accident Assoc.*, 249 Minn. 91, 81 N.W.2d 610, 614 (1957). Proofs of loss also enable insurance companies to form "a basis for further steps to be taken [in a matter] . . . ranging from full settlement to absolute repudiation of liability." *United States Fire Ins. Co. v. Merrick*, 171 Md. 476, 489, 190 A. 335 (1937); *see also Harvey*, 278 Md. at 553, 366 A.2d 13; *Fishel v. Yorktowne Mut. Ins. Co.*, 254 Pa.Super. 136, 385 A.2d 562, 564 (1978)(the purpose behind proofs of loss is "to allow the insurer to form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, and to prevent fraud and imposition upon it"). Moreover,

> [t]he term "proofs of loss" is a technical term, meaning formal proofs generally furnished on prescribed forms. In furnishing proofs, the insured must, if possible, give all the information called for by the policy. However, the chief purpose of proofs of loss is to acquaint the insurer with the circumstances relative to the loss, and as to its nature and extent, so as to form a basis for further steps to be taken by the insurer, and the general holding is that any statement or proofs which are sufficient to give such information constitute a compliance with the policy terms.

5A Appleman, *Insurance Law and Practice* § 3531 (1981).

Substantial compliance with proof of loss provisions is all that the law requires. *Merrick*, 171 Md. at 489, 190 A. 335. When an insured acts diligently and in good faith in disclosing information to an insurer, proof of loss provisions are liberally construed in furtherance of the indemnity contemplated by the parties. *Id.* In other words, courts must impose a " 'liberal and reasonable construction of the stipulations of the contract which prescribe the formal acts on the part of the insured [and are] necessary to the recovery of the loss.' " *Id.* (quoting *McNally v. Phenix Ins. Co.*, 137 N.Y. 389, 33 N.E. 475, 478 (1893)). When it is not reasonably possible to comply with a provision limiting the time for furnishing proofs of loss, the provision will not be strictly enforced. 5A Appleman, § 3511. The reasonableness of an insured's efforts

to abide by the proof of loss provision will depend on the facts of each individual case. 5A Appleman, § 3510. Under proper circumstances, a delay in furnishing proofs of loss may be excused. 5A Appleman, § 3511. Thus,

> [t]he general rule is that, where the delay in furnishing proofs [of loss] or the giving of notice is due to circumstances not attributable to neglect or bad faith on the part of plaintiff, **and the required proofs or notice were, in fact, furnished within a reasonable time under the circumstances,** failure to file within the time stipulated is excusable.

*Curran v. National Life Ins. Co.,* 251 Pa. 420, 96 A. 1041, 1045 (1916).

When an "insured has engaged competent persons to act on his behalf, this will do much to show his compliance" with policy provisions. 5A Appleman, § 3510. *See Carpenter v. German-American Ins. Co.,* 135 N.Y. 298, 31 N.E. 1015, 1016 (1892)(an experienced adjuster was hired to prepare formal proofs of loss and the court held that a delay of 115 days in furnishing proofs was not unreasonable under the circumstances). In addition, an insured is entitled to amend his proofs of loss and supply omissions, unless there has been a concealment of information or unless he is estopped. *Automobile Ins. Co. v. Thomas,* 153 Md. 253, 262, 138 A. 33 (1927). "[I]f there are ambiguities in the proofs or [if there is] a lack of information upon a certain point, it is the duty of the insurer, desiring more specific information, to return the proofs, pointing out the defects, so as to afford the insured a **reasonable opportunity** to remedy such defects." 5A Appleman, § 3581 (Emphasis added).

Although an insured has a duty to act in a reasonable manner when providing proofs of loss to the insurer, this duty

> does not mean ... that a forfeiture of the policy will necessarily result where a literal compliance is not made with the policy requirements. Compliance may still be required as a condition to the maintenance of suit by the insured upon the contract; **but unless a condition of**

forfeiture is specifically set forth in the contract, forfeiture will not result where the insured fails to give the required notice or to make the required proofs. The courts will not read such a condition into a contract in which it does not exist, but maturity of the claim, or the right to recover thereon, is postponed until notice and proofs have been submitted

\* \* \* \* \* \*

Proof provisions are often not considered to require as prompt service as notice of the loss itself, and **if the insured gave prompt notice, and prepared the proofs of loss as expeditiously as possible, no forfeiture would result.** The courts have been rather liberal as regards compliance with such conditions. But where a requirement as to notice and proofs is clearly and cogently set forth, either compliance therewith or a waiver of such provisions must usually be shown, or the rights of the insured and those claiming through him will be barred. And where an unreasonable delay is shown to have occurred, recovery will not be permitted.

5A Appleman, § 3504 (Emphasis added). *See generally Hirsch–Fauth Furniture Co. v. Continental Ins. Co.*, 24 F.2d 216, 218–20 (S.D.Fla.1928) (no forfeiture of a claim will result if prompt notice is given to the insurer and the proofs of loss are prepared and submitted as expeditiously as possible under the circumstances); *Hartford Fire Ins. Co. v. Redding*, 47 Fla. 228, 37 So. 62, 66 (1904) (failure to submit proofs of loss within the time prescribed by the policy will not invalidate the policy but will merely postpone payment on the claim).

Courts are reluctant to declare a forfeiture solely because the insured failed to file a formal estimate of loss within the time provided by the contract. 5A Appleman, § 3507. As a result, courts have frequently held that a failure to file proofs within a specified time will not bar recovery of the loss but will merely delay action on the policy. 5A Appleman, § 3507. Such action is particularly appropriate

**when no provision for forfeiture is contained in the policy in the event of the insured's noncompliance ...** [T]he courts have held ... that the effect [of a delay] is merely to postpone maturity of the claim and [to postpone] the right of the insured to sue until such proofs have been submitted. Even where an express provision makes the furnishing of such proofs a condition precedent to suit, that is its effect. However, **such failure or delay is a proper subject for comment before the jury. And it is still contemplated that such proofs shall be rendered within a reasonable time.**

5A Appleman, § 3507 (Emphasis added).

The insurance policy at issue contained no provision stating that, in the event that the Himelfarbs failed to submit a timely proof of loss, they would forfeit their right to recover on the loss. Because the insurance policy was silent regarding what would happen in the event that the insureds failed to provide a timely and sufficient proof of loss, the trial court was legally incorrect in reading a forfeiture provision into the policy and granting Hartford's motion for summary judgment. Moreover, as indicated above, the law does not favor forfeitures. Thus, even if the policy had contained an express forfeiture provision, a forfeiture would not necessarily follow. When dealing with proofs of loss, a more appropriate course of action is to delay maturity of the claim for a reasonable time to determine if compliance with contract conditions can be achieved. 5A Appleman, § 3507.

The question of whether there was substantial compliance with a proof of loss requirement may, in proper circumstances, be a fact issue. *See Mutual Fire Ins. Co. v. Pickett,* 117 Md. 638, 643, 83 A. 1097 (1912); *Mispelhorn v. The Farmers Fire Ins. Co.,* 53 Md. 473, 481–83 (1880) (whether the insured complied with a condition of the insurance policy was a factual issue to be determined by a jury); *see also Schoeman,* 32 N.W.2d at 215 ("The evidence that proofs of loss were furnished was ample to warrant the overruling of the ground of the motion for directed verdict based upon their asserted

insufficiency."); *Fletcher v. German–American Ins. Co.,* 79 Minn. 337, 82 N.W. 647, 648 (1900) (whether the proof of loss was submitted to the insurer within a reasonable time was an issue for the jury to determine upon all the evidence in the case).

■■■ Applying the above principles to the facts in this case and the reasonable inferences that can be drawn from those facts viewed in the light most favorable to the Himelfarbs, we conclude that a genuine dispute of material fact exists concerning whether the Himelfarbs complied with the proof of loss provision. After the theft, the Himelfarbs hired Goodman, a professional adjuster, to act on their behalf and to evaluate their theft loss. On November 28, 1995, the Himelfarbs timely submitted a signed and sworn proof of loss on a printed, notarized form that provided basic information including identification of the policy; the fact that a theft occurred and when; that the property had been stolen from leased space; and that the Himelfarbs had an interest in the property. The form indicated that the dollar amount of the loss was "to be determined." The cover letter forwarding the proof of loss form purported to reserve the right to file an amended proof of loss when the loss could be "consummated satisfactorily."

On November 30, 1995, Hartford sent the Himelfarbs a letter challenging the sufficiency of the proof of loss and stating that a failure to supply the information required within the next five days would result in a denial of their claim. The specific information referenced was the amount of the loss. On December 4, 1995, Goodman wrote a letter to Hartford stating that "[a]ll available information requested for the Hartford's investigation has been provided independently of the Proof." The Himelfarbs received the information from the bankruptcy auction on April 25, 1996, and on June 6, 1996, supplemented their prior proofs by filing a formal estimate of loss with supporting documentation. Hartford denied the claim by letter dated December 6, 1996. In that letter, to the extent pertinent here, Hartford stated that the denial was

based on a failure to provide a proof of loss as required by the policy. The letter implied that the deficiency was the untimely submission of supporting documentation.

We conclude that the Himelfarbs raised a genuine issue of fact as to whether they produced all information available to them as soon as it reasonably could be obtained and produced. Based on these facts, a trier of fact could reasonably find that the Himelfarbs had complied with the proof of loss provision in their policy, and therefore, deserved to recover on their loss.[5]

 Our decision recognizes the practicalities involved in ascertaining the amount of a loss. It may sometimes take months or even years to ascertain the extent of a loss, particularly when sophisticated wrongdoers are involved. If insureds who have legitimate claims and who act in good faith are not permitted to supplement their proofs of loss within a reasonable amount of time as determined by the particular circumstances, they may be deprived of any meaningful coverage under their policies. A result that does not contemplate the ability to amend or supplement a proof of loss under appropriate circumstances does not comport with principles of fairness and common sense. Furthermore, empowering an insurer with the sole discretion to determine when a proof of loss is sufficient would unfairly place insureds at the mercy of their insurance carriers. "An insurance company may not arbitrarily demand any particular form of proof of loss and is not the sole judge of its sufficiency." *Wright*, 81 N.W.2d at 614 (citing *Schoeman*, 32 N.W.2d at 215).

In sum, an insured is required to abide by and to adhere to the proof of loss provisions in its policy. When an insured acts diligently and in good faith, however, and is unable, under the circumstances, to file a sufficient proof by the specified date, the delay in filing a proof of loss does not necessarily bar recovery of a claim, even when the contract calls for such a

---

**5.** To state the obvious, we express no opinion on whether the Himelfarbs should ultimately prevail on that or any other factual issue.

forfeiture. A more appropriate course of action is to delay maturity of the claim for a reasonable time to determine if the insured has complied with the requirements of the proof of loss provision. The question of whether an insured has breached a proof of loss provision may be a question of law or fact in any given case. In this case, it is a question of fact.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**