**Margaret KRUG, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT
NO. 16, Spring Lake Park,
Minnesota, Respondent.**

No. 50294.

Supreme Court of Minnesota.

May 9, 1980.

Peterson, Engberg & Peterson, Roger A. Peterson, and William F. Garber, Minneapolis, for appellant.

Peterson, Popovich, Knutson & Flynn, Joseph E. Flynn and Patricia A. Maloney, St. Paul, for respondent.

Heard before OTIS, PETERSON, and TODD, JJ., and considered and decided by the court en banc.

TODD, Justice.

Margaret Krug served as a school nurse for Independent School District No. 16, Spring Lake Park, Minnesota, for over 15 years. She was a licensed public health nurse. The school district, because of financial limitations and discontinuance of a position, sought to remove Krug. Following a hearing, she was put on unrequested leave although other school nurses with less seniority were retained. On appeal, the district court determined that the school district's action was permissible under Minnesota law without referring to Krug's seniority. On motion for amended findings, the district court reaffirmed the school district's action by holding that Krug was not a "teacher" under applicable Minnesota statutes and was thus without seniority rights. We reverse and remand for further proceedings consistent with this opinion.

Krug is a certified public health nurse who began working for the school district in September 1962. She was paid according to the teachers' negotiated agreement at a higher wage than that of a registered nurse. On May 23, 1978, the school district held a public hearing in order to determine whether Krug, and another person not a party to this case, should be placed on an unrequested leave of absence. At the hearing, the school district presented evidence that the school district was on a tight budget "close to its financial edge of catastrophe"; that the school district had been instructed to cut expenses by the school board; and that it was economically wise to replace public health nurses with registered nurses who could do the same work at less cost. Based upon this uncontradicted evidence, the school district placed Krug on an unrequested leave of absence on May 30, 1978.

Krug then petitioned the Anoka County District Court for a writ of certiorari to review the school district's decision. The writ was issued on July 18, 1978. On March

6, 1979, the district court discharged the writ as improvidently granted. In an accompanying memorandum, the district court stated in part:

*Was Petitioner's Placement for Grounds Specified in Minn.Stat. § 125.12, subd. 6(a)?*

As stated above, the four statutory grounds for placing petitioner on unrequested leave of absence are

1) discontinuance of position, 2) lack of pupils, 3) financial limitations, or 4) merger of classes caused by consolidation of districts.

The grounds given petitioner were financial limitations and discontinuance of position. Petitioner contends that use of the ground of financial limitation is not in itself sufficient but that if the financial limitation ground is used it must be shown that the "position" of the teacher has been discontinued. In effect petitioner argues that if financial limitation is the only asserted ground, a school board must cut expenditures in some other way than cutting teaching personnel. If it does cut personnel, it cannot retain the "position". Petitioner relies on a long line of cases * * *. It is not necessary to analyze and attempt to reconcile all the decisions. * * * It seems clear from a reading of the statute that the four grounds are independent and that a teacher may be placed on unrequested leave for financial limitations alone. The statute, Minn.Stat. § 125.12, subd. 6(a) does not say that a position may be discontinued because of financial limitations, but says a *teacher* may be placed on leave for one of the four reasons specified.

In its memorandum, the court also discussed the issue of whether Krug could be placed on an unrequested leave of absence even though her "position" had been continued. This discussion raised the definitional problem of whether Krug's position was as a "school nurse" or as a "public health nurse". The court did not decide which position Krug held. Rather, it repeated that the statute allowed a teacher to be placed on an unrequested leave for financial reasons alone regardless of whether or not the teacher's position was continued. Finally, the court decided that the financial grounds cited by the school district for placing Krug on unrequested leave were not arbitrary or capricious.

On March 26, 1979, Krug moved for amended findings of fact, new trial, and relief from judgment or order under Rules 52.02, 59.01(7), and 60.02(6), Rules of Civil Procedure. Krug based this motion on the theory that it was contrary to state law to place a teacher with greatest seniority in a position on unrequested leave of absence for financial reasons without also showing that the teacher's position had been discontinued.

On May 22, 1979, the district court denied the motion and issued the following addendum to its March 6, 1979, order:

### ADDENDUM

Petitioner has made a motion for amended findings of fact, new trial, and relief from judgment or order. The Court notes, first of all, that it made no findings of fact originally since the scope of review on a writ of certiorari does not permit an independent factfinding by this court. The present motion will be treated as one for relief from the court's previous order merely.

Petitioner claims that the court's basis for discharging the writ of certiorari was an erroneous interpretation of the Continuing Contract Law, Minn.Stat. 125.12, subd. 6(a). The Court, while reserving ruling on the question of whether petitioner was a "teacher", stated that even if petitioner were assumed to be a teacher, she would still be subject to placement on unrequested leave of absence for one of the four grounds stated, disjunctively, by the statute:

1) discontinuance of position,

2) lack of pupils,

3) financial limitations, or

4) merger of classes caused by consolidation of districts.

Petitioner persists in her argument that the Court must determine whether a "discontinuance of position" has in fact occurred and if not, the School Board may not place a teacher on leave. Petitioner argues that merely proving financial limitation (or lack of pupils, e. g.) would result in a situation where the school board could replace a senior teacher merely on grounds of financial limitation. As respondent correctly notes, that situation is not before the Court at this time.

Without further addressing the above issue(s), the Court holds that irrespective of the number of grounds that must be asserted as grounds for placing a teacher under § 125.12, petitioner does not fall within the protection of the statute. Petitioner is not a teacher for purposes of this Act. [Footnote omitted.]

Krug appealed the denial of her motion to this court on May 30, 1979.

The issues presented are:

(1) Is the appeal timely?

(2) Is Margaret Krug a teacher under applicable Minnesota statutes?

(3) If Krug is a teacher, does her position allow her to acquire seniority and tenure rights?

(4) If Krug has seniority and tenure rights, may she be placed on unrequested leave because of discontinuance of her position or because of financial limitations of the school district?

1. The school district contends that this appeal should be dismissed as untimely because Krug did not appeal within 30 days of the district court's first order filed March 6, 1979. *See* Rule 104.01, Rules of Civil Appellate Procedure. Krug contends that the May 30 filing of her appeal is timely because the district court raised a new, previously nonappealable issue in its May 22 amendment and thus started anew her time within which to appeal.

The general rule is that after amendment or modification of an order, the time within which an appeal must be taken begins to run from the date of the amendment or modification, although some states require that the modification be substantial before granting extended time to appeal. 21 A.L.R.2d 285, 287 (1952). In *E.C.I. Corp. v. G.G.C. Co.*, 306 Minn. 433, 435, 237 N.W.2d 627, 629 (1976), we said: "[T]he time to appeal an issue begins to run anew from a modification of judgment when the issue was for some reason not appealable before the modification." Under this rule, the May 22 amendment could be said to have raised a new issue because the district court had not specifically ruled whether Krug was a teacher in its original order. On the other hand, the original order ruled that Krug could be dismissed for financial reasons alone, whether or not she was a teacher. Thus, it would seem that the issue of Krug's status could have been raised on appeal from the original order.

In *E.C.I. Corp. v. G.G.C. Co.*, 306 Minn. at 435, 237 N.W.2d at 629, we also said, however:

The rules of this court are designed to effectuate the orderly administration of justice and do not control its jurisdiction, for it retains the constitutional power to hear and determine, as a matter of discretion, any appeal in the interest of justice. A strict application of the rule [concerning amended orders] would bar the appeal in this case, for it appears that the defendant could have raised all its substantive issues on an appeal from the first judgment. Nevertheless, on the peculiar facts of this case, justice is better served by allowing the appeal.

In the interest of justice there seem to be good reasons to entertain Krug's appeal. It is uncontested that Krug moved to vacate the discharge order because she wanted a decision on whether her position had been terminated. She believed that without such a decision the record for appellate review would be incomplete. Whether or not Krug's belief is correct, it would seem unjust to dismiss her appeal when the record indicates that all her actions were taken promptly and with the intent of creating a complete record for appellate review.

2. Minn.Stat. § 125.12, subd. 1 (1978), defines a teacher in these terms:

"A superintendent, principal, supervisor, and classroom teacher and *any other professional employee required to hold a license from the state department shall be deemed to be a 'teacher'* within the meaning of this section." (Emphasis added.)

There is no dispute that Krug is a professional employee who holds a license from the state department.[1] There is dispute, however, about whether Krug qualifies as a teacher as one who is "required" to hold a license.

The board of teaching licenses teachers under rules promulgated by it which are "based solely on criteria and qualifications approved by the state board of education." Minn.Stat. § 125.05, subd. 1 (1978). Among its duties, the board shall develop rules for licensure of teachers and shall grant licenses to qualified applicants. Minn.Stat. § 125.185, subd. 4 (1978). Pursuant to its statutory mandate and authority, the board promulgated rules for the licensure of school nurses in 5 MCAR 3.106 which provide:

The board of teaching will issue licenses as school nurse to applicants who meet the requirements of this section, § 3.106A. or § 3.106B. Nothing in this section shall prohibit a school board from hiring non-licensed registered nurses to provide nurse services under the direction of the superintendent or of a licensed school nurse.

A. Professional license (for public health nurses).

1. A professional license as school nurse, valid for two years, may be granted to an applicant who fulfills the following requirements:

a. Current registration to practice as a licensed registered nurse in Minnesota, and

b. A baccalaureate degree from a regionally accredited college or university, and

c. Licensed as a public health nurse pursuant to Minn.Stat. § 145.10.

2. Renewal of two-year license.

a. May be renewed for five years after one year of successful experience.

B. Professional license (for registered nurses who hold a baccalaureate degree).

1. A professional license as a school nurse, valid for two years, may be granted to an applicant who fulfills the following requirements:

a. Current registration to practice as a licensed registered nurse in Minnesota, and

b. A baccalaureate degree from a regionally accredited college or university.

2. Renewal of two-year license.

a. May be renewed for five years after one year of successful experience, and

b. A minimum of nine quarter or six semester hours of credit in college courses which must be earned from two of the four following fields:

*Curriculum*

Education of exceptional children

Educational psychology

School health instruction or school health program.

C. The five-year professional license may be renewed according to general rules of the board of teaching pertaining to continuing education.

Under these regulations, the only persons in the school system who may hold themselves out as public health nurses are those who hold licenses from the state department through the board of teaching. Since Krug is required to hold a license in order to be considered a public health nurse, we conclude that she is a "teacher" under the provisions of Minn.Stat. § 125.12, subd. 1 (1978).

 3. The school district cites to our decisions in *Stang v. Independent School District No. 191,* 256 N.W.2d 82 (Minn.1977), and *Chiodo v. Board of Education of Special School District No. 1,* 298 Minn. 380, 215 N.W.2d 806 (1974), for the proposition that

---

1. The state department is the Department of Education. Minn.Stat. §§ 125.01 and 120.02, subd. 8 (1978).

Krug does not have tenure or seniority rights even though she is licensed as a teacher in the position of a school nurse. We do not believe those cases are applicable to this situation. In *Stang* and *Chiodo,* we held that a tenured teacher did not acquire separate tenure rights in the position of a head athletic coach where the coaching services were rendered in addition to teaching duties. In those cases we were dealing with ancillary services performed by the teachers. This case involves Krug's full-time activity. It is this type of activity which is statutorily protected if the services being rendered are performed by a "teacher" as defined in Minn.Stat. § 125.12 (1978).

4. Having determined that Krug may acquire tenure and seniority rights, we must now determine whether her rights protect her from being placed on unrequested leave. Minn.Stat. § 125.12, subd. 6a (1978), states the four grounds for which teachers may be placed on unrequested leave, but it also states that the teachers' local and the school district may negotiate a plan providing for the precise procedures to be employed when placing teachers on leave. We therefore turn to the negotiated agreement to determine Krug's rights.[2]

Under Article 3.02 of the contract, the term "teacher" is defined as "all persons in the appropriate unit employed by the school district in a position for which the person must be certified by the State Board of Education." Krug is such a person and her job classification as school nurse is not listed as an exception to the definition of teacher in Article 3.02 of the contract. Thus, we can look to Article 14.03(A) to find the reasons for which Krug may be placed on unrequested leave. The only ones cited by the school district in this case are (1) discontinuance of position and (4) financial limitations.

In order to demonstrate that Krug's position will be discontinued, the school district differentiates between the role of public health nurse and the role of school nurse. The district then contends that the role of public health nurse will be discontinued when Krug is placed on leave because Krug is the only public health nurse in the school district. We do not accept this distinction. 5 MCAR § 3.106 establishes three levels within the position of school nurse; namely:

(1) A licensed school nurse who is a public health nurse;

(2) A licensed school nurse who is a registered nurse with a baccalaureate degree;[3]

(3) A nonlicensed registered nurse.

The witnesses for the school district indicate, however, there is no difference between the services performed by the members of each level. Chris Huber, superintendent of Independent School District No. 16, testified that the services performed by all the school nurses, including Krug, are very similar in nature. He further testified that the services presently provided by Krug would be provided after she is placed on leave by a nonlicensed registered nurse. Thus, it does not seem to us that public health nurse is a position separate from that of school nurse.

We hold that there is no reasonable basis to create two positions—public health nurse and school nurse—when the regulation creates only one position—school nurse—within which public health nurse is a level. This decision is supported by analogy as well as by trial testimony. The English Department of a school district includes many teachers. Some have bachelor degrees, some have master degrees, some may even have doctoral degrees. All teach English, however. Although those with doctoral degrees would be able to contribute more expertise to their work than those on lower

2. The district court examined only Minn.Stat. § 125.12, subd. 6a (1978), to find the grounds for placing teachers on unrequested leave. Although the statutory grounds and the grounds provided in the negotiated agreement are the same, we refer to the agreement because it provides a complete description of the procedures applicable to this case.

3. As of July 1, 1981, this category will be eliminated. 4 State Register 540–541 (October 8, 1979).

**32**

degree levels, the basic duties of an English teacher do not change. The school district could not successfully claim that removal of all doctoral level English teachers by replacing them with other level teachers constitutes a discontinuance of one of the three positions of English teacher. Yet, that is exactly what the school district seeks to do in the case of the position of school nurse. Since the school district is not discontinuing the position of school nurse, Krug cannot be placed on leave under the rationale that her position will be discontinued.

From the facts developed at the hearing, however, there are distinct financial limitations sufficient to have teachers placed on unrequested leave for that reason. Article 14.03(C) of the agreement specifies the precise order in which teachers shall be placed on leave if there is reason to have teachers placed on leave. The article states that teachers shall be placed on unrequested leave in "inverse order of seniority in the field and subject matter" in which they are employed. "No teacher shall be placed on unrequested leave if there is any other qualified teacher with less seniority in the same field and subject matter employed."

We hold that Krug cannot be placed on leave under the terms of the agreement until every other school nurse in the district has been placed on leave. Krug has the greatest seniority in her field and subject matter—school nurse. According to the agreement she may not be placed on leave while others with less seniority remain employed in her field. Since every other school nurse in the district has less seniority than Krug, each must be placed on leave before she is. The fact that the other school nurses in the district are not teachers under the present statutory definition is immaterial. No one with less seniority than Krug may be left in the position of school nurse when Krug is placed on leave.

The decision of the trial court is reversed, the writ of certiorari is reinstated, and the matter is remanded to the district court for further proceedings consistent with this opinion.