Gerald **LAIRD**, Petitioner, Appellant,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 317, DEER RIVER, MINNESOTA, Respondent.**

No. C7–83–57.

Supreme Court of Minnesota.

March 30, 1984.

---

Eric R. Miller, Marko J. Mrkonich, St. Paul, for appellant.

John M. Roszak, St. Paul, for respondent.

COYNE, Justice.

Gerald Laird appeals from an order of the district court affirming the resolution of Independent School District No. 317, Deer River, Minnesota, placing him on un- requested leave of absence pursuant to Minn.Stat. § 125.12, subd. 6a (1982), be- cause of discontinuance of position, lack of pupils, and financial limitations. We af- firm.

Late in 1981 the school board was ad- vised that because of anticipated reductions in state aid the district faced substantial budget deficits for 1982–83 and succeeding school years. Estimates based on the cur- rent budget predicted that the operating fund balance of $1.5 million would shrink to $154,111 by the end of the 1984–85 school year. The school board decided to lessen the impact of the projected deficits by cutting expenditures. Among the meas- ures adopted to implement a $195,000 re- duction in the 1982–83 budget was the elim- ination of three secondary school teaching positions. One of the positions eliminated was that of a social studies instructor.

From 1978 to 1982 enrollment in the school district decreased by more than 100 students; the number of secondary stu- dents dropped by 80. The district projected a further decline of 23 secondary students in the 1982–83 school year, bringing the total decrease in secondary students over the five-year period to 103. The school district had experienced an even sharper decline in social studies enrollment from 1185 during the 1980–81 school year to 1051 during the 1981–82 school year, and the projected social studies enrollment for the 1982–83 school year, based on a prere- gistration survey, was only 904.[1] As a result of the decrease in the number of secondary students and the preregistration survey, the school district planned to re- duce the number of social studies sections from 23 to 18. It was the school district's position that it could reduce the number of social studies instructors from 4.5 to 3.5 and still retain sufficient flexibility to pro- vide as many as 23 sections if necessary.

The collective bargaining agreement be- tween the teachers' association and the School District provided that teachers

1. Preregistration took place after notice had been given of the proposal to place Gerald Laird on unrequested leave of absence.

should be placed on unrequested leave of absence in inverse order of seniority. Gerald Laird, a concededly hardworking, capable, and popular teacher who had taught social studies within the school district since 1969, was the least senior teacher in the social studies department. At Laird's request a hearing was held before an independent hearing examiner, who found that substantial and competent evidence existed to sustain placing Laird on unrequested leave on grounds of financial limitation, lack of pupils, and discontinuance of position. After reviewing the evidence, the school board adopted the hearing examiner's recommended findings, conclusions, and decision and placed Laird on unrequested leave of absence. Laird appeals the decision of a three-judge panel of the district court affirming the action of the school district.

This appeal illuminates the tension between two policies embedded in the state's teacher tenure act: the policy of protecting continuing contract teachers from arbitrary termination and the policy of allowing school boards flexibility in dealing with the problems created by declining enrollments as well as other problems encountered in administering a school system. *Jerviss v. Independent School District No. 294,* 273 N.W.2d 638, 645 (Minn.1978). Although the tenure act was designed to protect the educational interests of the state by preventing arbitrary teacher demotions and discharges unrelated to ability, *Perry v. Independent School District No. 696,* 297 Minn. 197, 202, 210 N.W.2d 283, 287 (1973), it was not intended to place unreasonable restrictions on the powers a school district must possess to effectively administer the operation of the public schools. *Keller v. Independent School District No. 742,* 302 Minn. 324, 328, 224 N.W.2d 749, 752 (1974); *Walter v. Independent School District No. 457,* 323 N.W.2d 37, 42 (Minn.1982). The school board, as the duly elected represent-

ative of the parents, taxpayers, and other electors is vested with the management, supervision, and control of the school system; and the unrequested leave of absence provisions of the tenure act do not eliminate the board's flexibility. Minn.Stat. § 123.33 (1982). *State ex rel. Ging v. Board of Education,* 213 Minn. 550, 569, 7 N.W.2d 544, 555 (1942).

Here the school district based its action on discontinuance of position, lack of pupils, and financial limitations—three of the four statutory grounds for placing a teacher on unrequested leave of absence.[2] Although the appellant does not dispute the accuracy of the facts underlying the school board's decision, he contends that they do not support the conclusion that it was "necessary" to place him on unrequested leave. He also argues that the school district intermingled three independent grounds for placement on unrequested leave, thereby basing its action on an erroneous theory of law.

■ It is undisputed that enrollment in the school district, and particularly in the secondary school, had steadily declined since 1978. Including the projected decrease for the 1982–83 school year, the secondary school lost 103 pupils—more than one-sixth of its 1978 student population. More relevant to the inquiry from the appellant's point of view was the 134 pupil drop in social studies enrollment in the 1981–82 school year, with another decrease of 147 projected for the 1982–83 school year. Certainly, these facts constitute relevant evidence which a reasonable mind might accept as adequate to support the conclusion that the number of social studies sections to be offered during the 1982–83 school year should be reduced from 23 to 18 and the further conclusion that the number of social studies teacher positions should be reduced by one. *Whaley v. Anoka-Hennepin Independent*

---

2. Minnesota Statute § 125.12, subd. 6a provides: The school board and the exclusive bargaining representative of the teachers may negotiate a plan providing for unrequested leave of absence without pay or fringe benefits for as many teachers as may be necessary because of discontinuance of position, lack of pupils, financial limitations, or merger of classes caused by consolidation of districts.

*School District,* 325 N.W.2d 128, 130–31 (Minn.1982); *Soo Line Railroad v. Minnesota Department of Transportation,* 304 N.W.2d 301, 306 (Minn.1981). The drop in enrollment need not occur in a single school year, as appellant contends, to justify placing a teacher on unrequested leave. That a school district may choose to compensate for 'a gradual decline in the number of pupils by reducing the size of classes until the aggregate loss in enrollment justifies the elimination of one whole teaching position does not alter the reason for reducing the number of teachers: the teacher is placed on unrequested leave because of lack of pupils.

Nor does the statutory provision for placement on unrequested leave of as many teachers "as may be necessary" require a showing of *absolute* necessity. Cf. *Arrowhead Public Service Union v. City of Duluth,* 336 N.W.2d 68, 72 (Minn.1983). We have repeatedly stated that certiorari exists only to permit the court to determine whether or not the school board's findings of fact are arbitrary, capricious, or unreasonable. Absent the determination that the school board acted arbitrarily, capriciously or unreasonably, "neither the district court on *certiorari* nor this court on appeal can interfere with the school board in its decision as to the existence of statutory grounds for discharge, provided the board acted in good faith and on a correct interpretation of the law." *Ellerbrock v. Board of Education, Special School District No. 6,* 269 N.W.2d 858 (Minn.1978). (quoting *Ging v. Board of Education v. City of Duluth,* 213 Minn. 550, 571, 7 N.W.2d 544, 556 (1943)).

Nothing in the record before us suggests that malice, political or partisan trends, caprice, or arbitrariness entered into the school board's decision. On the contrary, the record provides a substantial basis for the decision to eliminate one social studies teaching position because of lack of pupils. Since the existence of a single statutory ground affords an adequate basis for the school district's action,

there is no need to discuss the other grounds cited by the district.

Affirmed.