Rachel BLANK, et al., Respondents,

v.

INDEPENDENT SCHOOL DISTRICT NO. 16, Petitioner, Appellant.

No. C9–85–212.

Supreme Court of Minnesota.

Aug. 29, 1986.

Rehearing Denied Oct. 3, 1986.

Patricia A. Maloney, St. Paul, for petitioner, appellant.

William F. Garber, Minneapolis, for respondents.

COYNE, Justice.

The appellant, Independent School District No. 16, placed respondent Rachel Blank and seven other teachers on unrequested leave of absence at the close of the 1982–83 school year. Upon writ of certiorari by Blank and two other teachers, the Anoka County District Court ordered their reinstatement. On appeal by the school district, the court of appeals upheld the district court's order with regard to Blank, holding that she was not precluded from disputing the validity of a seniority list, which she had not timely questioned according to the terms of a collective bargaining agreement, and finding her qualified to "bump" an elementary education teacher. *Blank v. Independent School District No. 16,* 372 N.W.2d 386 (Minn.App.1985). We reverse and reinstate the decision of the school board with respect to respondent Blank, the only teacher involved in this review.[1]

---

1. By the date of the district court opinion, only two teachers, Rachel Blank and Kent Charron, were parties to the action. Both were respondents before the court of appeals. The court

On April 12, 1983 the school district proposed placing eight teachers on unrequested leave of absence. Ms. Blank, whose assigned position as a teacher of the visually impaired, grades K–12, was being discontinued, also holds a license in elementary education. At a hearing requested by the teachers respondent Blank testified that teaching visually handicapped students the compensatory skills necessary to compete academically included teaching elementary level subjects to students who could not work in a classroom setting. She contended that this experience, coupled with her license in elementary education, qualified her to bump a less senior elementary education teacher. The school district countered that respondent was bound by the seniority list on which she was listed as licensed only to teach the visually handicapped, grades K–12, and that because she had never held a classroom assignment in elementary education, she was not a qualified elementary teacher. The hearing examiner found that under the terms of the governing collective bargaining agreement, respondent was not qualified to bump an elementary education teacher. The school district adopted the hearing examiner's recommendations and placed respondent on unrequested leave of absence. Both the district court and the court of appeals ruled that defects rendered the seniority list nonbinding, relieving respondent of the obligation to grieve, and they found that her

work with the visually impaired qualified her as a teacher in elementary education.

Pursuant to Minn.Stat. § 125.12, subd. 6a (1984), Independent School District No. 16 and The Spring Lake Park Federation of Teachers Local 1355 had negotiated a plan providing for unrequested leave of absence. The plan, which was incorporated into their collective bargaining agreement effective through June 30, 1983, provided that the school district could place on unrequested leave of absence without pay or fringe benefits as many teachers as "may be necessary because of discontinuance of position, lack of pupils, financial limitations, or merger of classes." According to the plan, teachers were to be placed on unrequested leave "in inverse order of seniority in the field and subject matter." The plan required the school district to prepare a seniority list, which would be "binding on the school district and any teacher" and which would "govern the application of the unrequested leave of absence policy." The plan set out a grievance procedure to be invoked in the event a teacher questioned the accuracy of the seniority list.[2]

Although a "qualified teacher" is defined by statute simply as "one holding a valid license * * * to perform the particular service for which he is employed in a public school," Minn.Stat. § 125.04 (1984), the unrequested leave of absence and seniority

reversed the district court order reinstating Charron. Charron has not petitioned this court for further review.

**2. 15.05 Establishment of Seniority List:**

(A) The school district shall cause a seniority list (by name, date of employment, qualification and subject matter or field) to be prepared from its records. It shall thereupon post such list in an official place in each school building of the district no later than December 15 of each year.

(B) Any person whose name appears on such list and who may disagree with the findings of the school board and the order of seniority in said list shall have twenty (20) working days from the date of posting to supply written documentation, proof and request for seniority change to the school board.

(C) Within ten (10) working days thereafter, the school district shall evaluate any and all such written communications regarding the order of seniority contained in said list and may

make such changes the school district deems warranted. A final seniority list shall thereupon be prepared by the school district, which list as revised shall be binding on the school district and any teacher. Each year thereafter the school district shall cause such seniority list to be updated to reflect any addition of or deletion of personnel caused by retirement, death, resignation, other cessation of services, or new employees. Such yearly revised list shall govern the application of the unrequested leave of absence policy until thereafter revised.

(D) Effect: This Article shall be effective at the beginning date of this master contract and shall be governed by its duration clause. This Article shall govern all teachers as defined therein and shall not be construed to limit the rights of any other licensed employee not covered by the master contract or other master contract affecting such licensed employee.

plan defines a qualified teacher as one who is under continuing contract, is regularly employed at least an average of 10 hours per week and 85 days per year, and who is both "licensed to teach full time in the subject matter category and has successfully taught such subject matter category" within the school district.[3]

Accordingly, in the fall of 1982 the school district posted a seniority list for licensed employees in which Rachel Blank was listed as the 203rd teacher in order of seniority. The list carried the following entry for Ms. Blank:

| NAME | DATE OF EMPLOYMENT | BOARD APPROVAL | DATE RECOMMENDED | LICENSED FOR |
|------|--------------------|----------------|------------------|--------------|
| * * * | | | | |
| 203. Blank, Rachel | 8/21/79 | 6/12/79 | 5/24/79 | Visual Handicapped K–12 |

The list made no further reference to qualification and subject matter or field and, therefore, did not fully comply with the provisions of the unrequested leave and seniority policy contained in the collective bargaining agreement. Nevertheless, it seems to us that the shortcomings of the list did not relieve respondent of the obligation to object to the failure to include in the "LICENSED FOR" column her elementary education license.

Whether the order in which teachers are placed on unrequested leave is governed by statute, Minn.Stat. § 125.12, subd. 6b (1984) ("Teachers who have acquired continuing contract rights shall be placed on unrequested leave of absence in fields in which they are licensed in the inverse order in which they were employed by the school district."), or by a negotiated plan which requires not only that the teacher be licensed but also that the teacher has successfully taught the subject matter category, there can be no doubt that only those teachers licensed in a subject matter category are qualified to teach in that field and eligible to bump a junior teacher. Whatever talents, knowledge, or skills a teacher may possess, a license is the sine qua non of employment as a teacher by a school district. Hence, despite the absence of any reference to the other aspect of qualification under the plan—the subject matter categories which the teacher had "successfully taught" within the school district—the omission in the seniority list of respondent's elementary education license was sufficient to trigger the obligation to in-

**3. 15.02 Definitions:**

(A) For purposes of this [unrequested leave of absence and seniority] policy, the terms defined shall have the meaning respectively ascribed to them.

(B) "Teacher" means a continuing contract teacher who is regularly employed at least an average of ten (10) hours per week and eighty-five (85) days per year. Any person employed less than an average of ten (10) hours per week or eighty-five (85) days per year, and substitute teachers, shall not acquire seniority.

(C) "Qualified" shall mean a teacher who is licensed to teach full time in the subject matter category and has successfully taught such subject matter category within the Independent School District No. 16 school district.

(D) "Subject Matter" shall mean such categories as are determined by the State Department of Education for licensure purposes. K–6 shall be considered a category for purposes of this Article.

(E) "Seniority" means the number of days of continuous service of the regular school year (excluding summer sessions, extended employment, etc.) by a continuing contract teacher commencing with the first day of actual service in the school district and shall exclude probationary teachers, and those teachers who are acting incumbents for teachers on authorized military, or other similar leaves of absence.

In determining the length of seniority, a teacher whose employment has been legally terminated by resignation, or termination pursuant to M.S. 125.12, but whose employment was subsequently reinstated, by action of the school board and the teacher without interruption of regular service, shall retain his/her original seniority date.

voke the grievance procedures prescribed by the plan. Moreover, since respondent was entered on the seniority list posted in the fall of 1982 as licensed only for teaching visually handicapped children grades kindergarten through 12, it should have been perfectly obvious to her that the school district did not recognize her seniority except as a teacher of visually handicapped children.

Respondent does not contend that she did not know that a teacher who disagreed with the posted list was required to object within 20 days after the posting or that the seniority list was binding and governed the order in which teachers would be placed on unrequested leave. She merely attempts to excuse her failure to object to the list.

First she argues that she had no reason to object to the seniority list or to grieve if the school district refused to correct the error because everything on the list was true. One could, of course, make the same argument if the respondent's name or her date of employment or her license as a teacher of the visually handicapped had been omitted. While the defect in the argument would be more obvious in that case, the defect is the same under the actual circumstances here. What is included in the list may be true, but if the list does not comprise all the required information, it is not accurate. Under the terms of the collective bargaining agreement, it is incumbent on the teacher to bring the omission to the district's attention. Even a casual reading of the list reveals that other teachers were not so heedless of the contents of the seniority list which governed their eligibility to bump junior teachers. Multiple subject matter categories are shown in the "LICENSED FOR" column for several teachers. For example, the most senior teacher is listed as licensed in four subject matter categories and as a secondary school principal. Teacher number 67 is listed as licensed in seven subject matter categories, including elementary education 1–6, reading consultant K–12, elementary remedial reading, and secondary remedial reading.

Respondent also explains her failure to file a grievance regarding the omission of her elementary teacher license from the list by reference to the first page on the list:

The reason for it [the failure to grieve] being, I do want to note, the first page on the list says that you are listed only for what you have taught in the district and not necessarily what you are licensed for which is why I never filed a grievance for it.

This is the first page of the seniority list as it appears in the record:

SENIORITY LIST

FOR

LICENSED EMPLOYEES (AS DEFINED IN M.S. 125.03)

HAVING CONTINUING CONTRACTS

Approved February 8, 1983

The following seniority list of District # 16 certificated employees has been accepted by both District # 16 School Board and certificated employees of the District. The starred names indicate that the seniority is not cumulative from the starting date because of part-time service. Placement indicates equivalent full-time service.

Nothing on that page indicates that "licensed for" means "what a teacher has taught."

■ Of course, the school district, too, contends that the information on the seniority list under "LICENSED FOR" is a listing of people in order of seniority according to what they have taught in the district. Apart from the fact that these arguments give ground for the shocking inference that school administrators cannot write plain English and teachers cannot read it, if, as both parties assert, they both understood the "LICENSED FOR" column to set out what a teacher had successfully taught in the school district, that does not excuse respondent's failure to object to the list. If, as respondent now claims, her position as a teacher of the visually handi-

capped entailed teaching the subject matter taught by elementary teachers, then she was entitled to be listed as an elementary teacher as well as a teacher of the visually handicapped. Her failure to grieve the omission precludes respondent from raising the issue in these proceedings. *Jerviss v. Independent School District No. 294*, 273 N.W.2d 638, 647 (Minn.1978); *Ellerbrock v. Board of Education, Special School District No. 6*, 269 N.W.2d 858, 862 (Minn. 1978). *See also Roseville Education Association v. Independent School District No. 623*, 391 N.W.2d 846 (Minn.1986) (effect of failure to request a hearing pursuant to Minn.Stat. § 125.12 [1984] following notice of proposed placement on unrequested leave of absence).

Treating the seniority list as final and binding on the parties by reason of the failure to grieve, in timely fashion, the omission of licensure in a subject matter category may seem a harsh penalty indeed for the failure to perform what some would characterize as a technical requirement. The necessity for bringing a grievance is, however, clearly spelled out in the collective bargaining agreement. Had the seniority list shown respondent as licensed in both elementary education and to teach the visually impaired so that the defect—the absence of any reference to subject matter categories which a teacher had successfully taught within the district—lulled respondent into a false sense of security, the issue and, no doubt, the result here, would be quite different. Here, it is the teacher's neglect to follow the grievance procedure which permitted a disputed seniority list to become final. Moreover, not only should the school district be entitled to depend on the accuracy of the seniority list in placing teachers on unrequested leave of absence so that its attempts to meet financial constraints do not result in paying two teachers to fill one teaching position, but other teachers should also be entitled to know precisely where on the seniority list they stand so that they may make appropriate plans in times of declining enrollment and financial constraint. Whenever declining enrollments, financial constraints, or the discontinuance of one or more positions compel a reduction in the number of teachers a school district employs, unless normal attrition intervenes, *someone* must be placed on unrequested leave of absence. Whether the identity of that teacher be determined according to the statute, section 125.12, subd. 6b, or according to the negotiated terms of a collective bargaining agreement, it is imperative that the seniority list on which the parties must rely provide accurate information sufficient to determine the status of each contract teacher with certainty and finality.

Furthermore, the hearing officer found as fact that although respondent had taught some elementary students as their vision teacher, she is not qualified within the meaning of the collective bargaining agreement to bump an elementary teacher. The school board adopted the hearing officer's findings. We have consistently held that a school board's decision to terminate a teacher will be set aside only if the decision is arbitrary, capricious, or unreasonable, provided the board acted in good faith and on a correct interpretation of the law. *Laird v. Independent School District No. 317*, 346 N.W.2d 153, 156 (Minn.1984); *State ex rel. Ging v. Board of Education*, 213 Minn. 550, 571, 7 N.W.2d 544, 556 (1942). This court owes no deference to the lower courts' determination when reviewing school board employment decisions. *Kroll v. Independent School District No. 593*, 304 N.W.2d 338, 342 (Minn. 1981).

We have no doubt that respondent taught her visually impaired pupils subjects taught by elementary education teachers—subjects such as reading, spelling, and math. We have considerable doubt, however, that individually instructing students who cannot achieve satisfactory progress in mainstream classes can be equated with teaching in a mainstream elementary classroom. The specialized one-on-one instruction of the visually handicapped seems to involve tutorial skills rather than the teaching techniques employed in mainstream classrooms. In addition, there may be

some difference between having taught various combinations of core elementary subjects and having "successfully taught such subject matter category." This is not to say that job function is not in large measure determinative of qualification. It is simply to point out that the issue presented here is not an attempt to create two positions—visually handicapped K–12 and elementary education 1–6—when the regulation creates only one position. *See Krug v. Independent School District No. 16*, 293 N.W.2d 26, 31 (Minn.1980). The state board of education and the board of teaching issue separate licenses for teaching the visually handicapped and for elementary education. Presumably, there is a reason—namely, that the job functions of a teacher of the visually handicapped is different from the job function of a teacher in mainstream elementary education. Although good teachers in various fields may have many skills and characteristics in common and share many common experiences, elementary education and visually handicapped education are not interchangeable subject matter categories in the eyes of the licensing authorities.

Even if the failure to grieve were not conclusive of the finality of the seniority list, it seems to us that the hearing officer's finding that although respondent "has taught some elementary students as their vision teacher, she is not qualified within the meaning of the Master Agreement to bump an elementary teacher" is supported by substantial evidence and that, accordingly, the decision of the school board placing respondent on unrequested leave of absence may not be set aside.

Reversed. The decision of the school board placing respondent on unrequested leave of absence is reinstated.

YETKA, SCOTT and WAHL, JJ., dissent.

YETKA, Justice (dissenting).

I dissent and would affirm both the district court and the court of appeals. Both those courts found that Blank's failure to grieve the seniority list did not preclude her from challenging that list because it did not follow the format required in the collective bargaining agreement itself. Thus, the list was not a complete binding document giving her notice of any possible grievance.

As the lower courts found, the difference between the contract and the list was sufficient to render the agreement incomplete and non-binding, thereby allowing Blank to challenge the list at the ULA hearing and at the district court level. The publication of a seniority list exactly as described in the Master Agreement was a condition precedent to Blank's duty to register an objection within 20 working days or to begin grievance procedures. What the issue boils down to is this: Who should suffer the consequences of a seniority list that is either incomplete or incorrect—the school district that prepared it or the individual teacher affected? I believe that it should be the former. The school district argues that the bargaining agreement places the burden on the teacher to study the seniority list and to notify the district of any errors therein, but if Rachel Blank studied the seniority list, what would she find? All of the information contained therein is correct. It is what is omitted or improperly designated that causes the problem, namely, that she is licensed also in elementary education grades 1 through 6. As the trial court stated:

> No grievance was required of the Petitioners in this case because the jobs actually performed by the Petitioners included the job functions of the positions to which Petitioners wished to bump. The seniority list in this case is not a complete and binding document because it did not contain all of the categories required under Article 15.05(A) of the Master Agreement. * * * If bumping is to be determined by inclusion on the seniority list, and the contractual intent was to allow persons to bump whenever they had licensure or had successfully taught (were qualified to teach) the subject, then both areas had to be included on the list. In view of this clear contractual intent, the school district may not disregard the

contract by excluding categories from the seniority list and then penalizing Petitioners by forcing them to accept the results of the school district's error.

The drafter of an agreement, in the event of ambiguity, should be held responsible for that ambiguity. *See* Restatement (Second) of Contracts § 206 (1982); *ICC Leasing Corp. v. Midwestern Machinery Co.,* 257 N.W.2d 551, 555 (Minn.1977). This is even more important where the person against whom the agreement is to be enforced has his or her livelihood at stake. Therefore, Blank was not precluded from challenging her status at the ULA hearing and on appeal.

The court of appeals ruled that Blank was able to bump a less senior elementary education teacher because she had "successfully taught" elementary education within the meaning of the Master Agreement. Disagreeing with the school board's contention that Blank successfully taught only those courses she is formally assigned to teach, the court held that, since Blank actually taught elementary education subjects to her visually impaired students, she is qualified to teach elementary education within the meaning of the agreement.

In reviewing a school board's decision to place a teacher on ULA, this court uses an abuse of discretion standard:

> Absent the determination that the school board acted arbitrarily, capriciously or unreasonably, "neither the district court on *certiorari* nor this court on appeal can interfere with the school board in its decision as to the existence of statutory grounds for discharge, provided the board acted in good faith and on a correct interpretation of the law."

*Laird v. Independent School District No. 317,* 346 N.W.2d 153, 156 (Minn.1984) (quoting *State ex rel. Ging v. Board of Education,* 213 Minn. 550, 571, 7 N.W.2d 544, 556 (1942)). The court owes no deference to the trial court's determination when reviewing school board employment decisions. *Kroll v. Independent School District No. 593,* 304 N.W.2d 338 (Minn.1981).

This court has not directly addressed the present issue, but in analogous cases, we have focused on job function in defining a position. In *Krug v. Independent School District No. 16,* 293 N.W.2d 26 (Minn.1980), the same school district attempted to differentiate between the position of public health nurse and school nurse in determining seniority for placement on ULA. The court adopted the position that job function should determine qualification:

> We hold that there is no reasonable basis to create two positions—public health nurse and school nurse—when the regulation creates only one position—school nurse—within which public health nurse is a level. This decision is supported by analogy as well as by trial testimony. The English Department of a school district includes many teachers. Some have bachelor degrees, some have master degrees, some may even have doctoral degrees. All teach English, however. Although those with doctoral degrees would be able to contribute more expertise to their work than those on lower degree levels, the basic duties of an English teacher do not change. The school district could not successfully claim that removal of all doctoral level English teachers by replacing them with other level teachers constitutes a discontinuance of one of the three positions of English teacher. Yet, that is exactly what the school district seeks to do in the case of the position of school nurse. Since the school district is not discontinuing the position of school nurse, Krug cannot be placed on leave under the rationale that her position will be discontinued.

*Krug,* 293 N.W.2d at 31–32. *See also Berland v. Special School District No. 1,* 314 N.W.2d 809, 811 (Minn.1981) ("the 'position' of a teacher cannot be defined too narrowly"). Thus, I would hold that it was arbitrary and capricious for the school district to find that Blank, a licensed elementary education teacher, was not "qualified" as having "successfully taught" elementary education classes when she had continuous-

ly taught such elementary subjects as arithmetic, spelling and reading to her visually handicapped students.

SCOTT, Justice (dissenting).

I join in the dissent of Justice Yetka.

WAHL, Justice (dissenting).

I join the dissent of Justice Yetka.