Debra A. FLAHERTY, Relator,

v.

**INDEPENDENT SCHOOL DISTRICT NO. 2144, CHISAGO LAKES AREA SCHOOLS, Respondent.**

No. C3–97–1281.

Court of Appeals of Minnesota.

April 14, 1998.

Review Denied June 17, 1998.

Rebecca H. Hamblin, Christina L. Clark, Minnesota Education Association, St. Paul, for relator.

Patricia A. Maloney, Jill H. Coyle, Ratwik, Roszak & Maloney, P.A., Minneapolis, for respondent.

Considered and decided by KLAPHAKE, P.J., and WILLIS and MULALLY,* JJ.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

WILLIS, Judge.

Relator Debra Flaherty seeks review by writ of certiorari of respondent school district's determination that her 79 hours of nonsubstitute work during the 1993–94 academic year did not constitute a year of probationary employment. We reverse.

### FACTS

Relator Debra Flaherty began work as a substitute teacher for respondent Chisago Lakes school district in the fall of 1993. Her substitute teaching contract explicitly provided that the work did not count as probationary employment for purposes of obtaining continuing contract status. Beginning September 8, 1993, and continuing for the remainder of the school year, Flaherty also worked with independent study students for approximately two hours each week in the district's Alternative Learning Center (ALC). This work was not mentioned in Flaherty's substitute contract and was not approved by the school board; Flaherty entered into no regular teaching contract. The district did not include Flaherty on its seniority list for the 1993–94 school year and did not evaluate her as a probationary teacher during that year. Flaherty's time sheets show that she spent a total of 79 hours as an ALC instructor.

Flaherty entered into a contract for the 1994–95 school year as a regular ALC instructor, initially working 4/5 time and later increasing her hours to full-time, with duties that included those she had performed in 1993–94. The school district annually posts a seniority list of teachers with continuing contract status pursuant to a collective bargaining agreement and also posts a list of probationary teachers, with hire dates. During the 1994–95 school year, Flaherty appeared on the list of probationary teachers, with a hire date of September 1994. She did not contest her hire date pursuant to grievance procedures in collective bargaining agreement that year, nor did she grieve her appearance on the list of probationary teachers, rather than continuing contract teachers, in the 1996–97 school year.

At the end of the 1996–97 school year, the school board voted to nonrenew Flaherty's contract, following procedures applicable to a probationary teacher. Flaherty appeals by writ of certiorari, and we reverse.

### ISSUES

1. Is Flaherty's claim barred by failure to exhaust administrative remedies, waiver, or untimeliness of the petition for certiorari?

2. Did the school district err in determining that Flaherty's work in 1993–94 did not qualify as a year of probationary employment?

### ANALYSIS

**Procedural Issues**

**Exhaustion of administrative remedies**

■ The school district argues that Flaherty failed to exhaust administrative remedies because she did not contest her placement on seniority lists as a probationary teacher with a 1994 hire date. The applicable collective bargaining agreements [1] provide that a teacher has ten days to contest in writing her placement on a seniority list and that the school district, after evaluating teachers' claims, must then post a final list that "shall be binding" on the district and on teachers.

■ But the collective bargaining agreements also provide that the annual revised seniority list "shall govern the application [of] the unrequested leave of absence policy." The "definitions" section of the same article of the agreements provides that " '[s]eniority' * * * shall exclude probationary teachers * * * ." The provision presumably excludes probationary teachers because the district has no need to place such teachers on unrequested leaves of absence; probationary teachers may be nonrenewed at the district's

---

1. The relevant language is identical in the two collective bargaining agreements in force at different times during Flaherty's employment.

"total discretion."[2] *Allen v. Board of Ed. of Indep. Sch. Dist. No. 582*, 435 N.W.2d 124, 126 (Minn.App.1989), *review denied* (Minn. Apr. 19, 1989).

Because seniority is relevant only to teachers with continuing contract status, nothing in the collective bargaining agreements required the district to maintain a list of probationary teachers. The agreements, therefore, provided no basis in 1993–94 for Flaherty to grieve her absence from that list or in 1994–95 or 1995–96 to grieve her listed hire date. Although Flaherty could have grieved her absence from the list in 1996–97, the year in which she alleges she should have been included on the list of teachers with continuing contract status, the agreements indicate that the list is binding only with respect to unrequested leaves of absence. Seniority provides a set of rights distinct from continuing contract status, which grants a teacher certain rights relating to termination. *Berland v. Special Sch. Dist. No. 1*, 314 N.W.2d 809, 814 (Minn. 1981).[3] At oral argument, Flaherty's counsel conceded that Flaherty has waived her right to contest her listed hire date for seniority purposes but argued that the list is not binding for purposes of determining when Flaherty acquired continuing contract status. *Cf. Blank v. Independent Sch. Dist. No. 16*, 393 N.W.2d 648, 652 (Minn.1986) (holding that teacher's failure to grieve incorrect information on seniority list precluded certiorari for challenge to unrequested leave of absence because list was binding as to that issue). We agree and conclude that Flaherty's claim is not barred by failure to exhaust administrative remedies because no remedies existed.

**Waiver**

■ The school district also argues that Flaherty's failure to grieve her absence from the list of teachers with continuing contract status amounts to a waiver of her right to claim such status. Rights under the continuing contract statute may be waived, but such waiver must be knowing and voluntary and will not be upheld where the teacher had no choice in contract terms. *Rochester Educ. Ass'n v. Independent Sch. Dist. No. 535*, 271 N.W.2d 311, 315 n. 6 (Minn.1978).

■ The supreme court summarized the law of waiver in *Engstrom v. Farmers & Bankers Life Ins. Co.*, 230 Minn. 308, 41 N.W.2d 422 (1950):

> The definition of a waiver most commonly accepted is that it is a voluntary relinquishment of a known right. Both intent and knowledge, actual or constructive, are essential elements.

> \* \* \* \* \* \*

> The question of waiver is largely one of intention. It need not be proved by express declaration or agreement, but may be inferred from acts and conduct not expressly waiving the right. Waiver is ordinarily a question of fact for the jury.

*Id.* at 311–12, 41 N.W.2d at 424 (citations omitted).

> The intent is \* \* \* rarely to be inferred as a matter of law. Conduct indicating a waiver may be so inconsistent with a purpose to stand upon one's rights as to leave no room for a reasonable inference to the contrary. Then the intent to waive appears as a matter of law.

*Farnum v. Peterson–Biddick Co.*, 182 Minn. 338, 341, 234 N.W. 646, 647 (1931).

■ While failure to exhaust administrative remedies bars an action by operation of law, a finding of waiver requires a determination of intent to relinquish a right. The school district relies on *Foley Educ. Ass'n v. Independent Sch. Dist. No. 51*, 353 N.W.2d 917, 922–23 (Minn.1984), in which the supreme court concluded that a union waived the right to object to proposed class schedul-

---

2. But there is a statutory provision for placing probationary teachers on unrequested leave of absence. Minn.Stat. § 125.12, subd. 6b(a) (1996).

3. *Berland* discussed the distinction between seniority and tenure, the equivalent to continuing contract status in school districts within cities of the first class. *Berland*, 314 N.W.2d at 814. For our purposes, tenure and continuing contract status are identical because both relate to termination of employment, while seniority relates to unrequested leaves of absence, or temporary layoffs. Cities of the first class are cities with a population of more than 100,000. Minn.Stat. § 410.01 (1996).

ing changes by failing to demand negotiation after notice of the changes. In the certiorari context, the school district bears the burden of producing a sufficient record as well as the burden of proof. *Dokmo v. Independent Sch. Dist. No. 11*, 459 N.W.2d 671, 676 (Minn. 1990). The *Foley* court affirmed the district court's findings, based on an extensive record. *Foley*, 353 N.W.2d at 922–23. Here, the school board did not base its decision on a waiver by Flaherty, and the district has not provided evidence that requires this court to infer that Flaherty's failure to grieve her absence from the seniority list was an intentional relinquishment of a right rather than an oversight.[4] It is not the function of this court on certiorari to make factual findings on an issue the school board did not address, but rather we review the school board's actions. *Dokmo*, 459 N.W.2d at 676. We therefore decline to find that Flaherty's claims are barred by the equitable doctrine of waiver.

### Untimeliness

■ The school district argues that Flaherty's petition for certiorari was untimely under Minn.Stat. § 606.01 (1996), which provides:

No writ of certiorari shall be issued, to correct any proceeding, unless such writ shall be issued within 60 days after the party applying for such writ shall have received due notice of the proceeding sought to be reviewed thereby.

Untimeliness under this statute is a jurisdictional defect. *In re Ultraflex Enters.*, 494 N.W.2d 89, 90–91 (Minn.App.1992).

The school district argues that Flaherty was required to seek a writ of certiorari after the district posted (1) the 1993–94 list of probationary teachers on which Flaherty was not included, (2) the 1994–95 list on which Flaherty first was listed with a 1994 hire date, or (3) the 1996–97 lists, which included Flaherty on the list of probationary teachers rather than the seniority list of teachers with continuing contract status. The school dis-

trict claims that these postings provided notice that the district considered 1994 to be Flaherty's hire date. The supreme court has held that posted notices reasonably calculated to reach adversely affected employees may constitute "due notice" for purposes of the certiorari statute. *Bahr v. City of Litchfield*, 420 N.W.2d 604, 607 (Minn.1988).

■ We conclude, however, that the school district's determination of hiring dates for purposes of the seniority list could not have been the subject of a certiorari appeal by Flaherty. As we have noted, the list of teachers with continuing contract status is legally binding only with respect to unrequested leaves of absence, and the list of probationary teachers is not binding for any purpose. Moreover, Flaherty suffered no actual harm from her placement on the list of probationary teachers until her nonrenewal. *Cf. Johnson v. Independent Sch. Dist. No. 281*, 494 N.W.2d 270, 274 (Minn.1992) (stating in dictum that if probationary principal had been subjected to mid-year termination for cause, as she argued, she was required to seek writ of certiorari at time of termination rather than when nonrenewed at end of year). Certiorari will not issue to prevent anticipated or speculative wrongs. *In re Petitions of D & A Truck Line, Inc., et al.*, 524 N.W.2d 1, 10 (Minn.App.1994) (citing *State ex rel. Mosloski v. County of Martin*, 248 Minn. 503, 506, 80 N.W.2d 637, 639 (1957)). Because Flaherty filed her petition within 60 days after the school board's vote, and that vote was the only event that could properly have supported a writ of certiorari, Flaherty's petition was timely.

### The Merits

■ This court will reverse a school board's determination when it is based on an error of law. *Dokmo*, 459 N.W.2d at 675. Determination of Flaherty's employment status involves interpretation of the applicable statutes, which is a legal issue fully reviewable by the appellate courts. *See Hibbing Educ. Ass'n v. Public Employment Relations*

---

4. The school district relies on this court's unpublished decision in *Rabe v. Joint Vocational Dist. No. 2186*, No. CX–95–1046, 1996 WL 33086 (Minn.App. Jan. 30, 1996). But in *Rabe,* the teacher had signed a series of contracts explicitly waiving the right to count her employment toward continuing contract status. *Id.* at 1.

*Bd.*, 369 N.W.2d 527, 529 (Minn.1985) (stating that administrative decisions construing the Public Employment Labor Relations Act are fully reviewable by appellate courts).

Because the Chisago Lakes school district is not in a city of the first class, Flaherty's employment is governed by Minn.Stat. § 125.12 (1996), which provides:

> Subd. 2. **Hiring, dismissing.** School boards shall hire or dismiss teachers at duly called meetings. * * * The initial employment of the teacher in the district shall be by written contract, signed by the teacher and by the chair and clerk.
>
> \* \* \* \* \* \*
>
> Subd. 3. **Probationary period.** The first three consecutive years of a teacher's first teaching experience in Minnesota in a single school district shall be deemed to be a probationary period of employment * * *. The school board shall adopt a plan for written evaluation of teachers during the probationary period. Evaluation shall occur at least * * * one time each year for a teacher performing services on fewer than 60 school days. * * * * During the probationary period any annual contract with any teacher may or may not be renewed as the school board shall see fit * * *.

Other sections of the statute provide greater procedural protections with regard to termination for teachers who achieve continuing contract status at the end of their probationary periods. *See id.* at subds. 4, 6, 8, 9, 9a, 10. The school district argues that Flaherty's nonsubstitute work in 1993–94 was not a year of probationary employment because (1) she had no contract, (2) she was not evaluated, and (3) her work was "de minimis."

### A. Lack of contract and of evaluation

■ The school district argues that its failure to abide by the statutory requirements that initial employment be by written contract and that a probationary teacher be evaluated periodically demonstrates that it did not consider Flaherty to have been a probationary teacher in 1993–94. But Flaherty's ALC duties were not substitute teaching and fell outside the scope of her substitute teacher's contract, and Flaherty could not contractually waive her rights under sec-

tion 125.12 where there was no contract. *See Rochester Educ. Ass'n,* 271 N.W.2d at 315 n. 6 (stating that waiver of statutory continuing contract rights must be knowing and voluntary and will not be upheld where teacher had no choice in contract terms).

■ The supreme court has stated that, where a school district attempts to circumvent the statutory requirement that substitute teachers may be hired on an "emergency" basis for no more than one year, a year of substitute teaching will count as a year of probationary employment. *Hudson v. Independent Sch. Dist. No. 77,* 258 N.W.2d 594, 596 (Minn.1977) (interpreting former version of Minn.Stat. § 123.35, subd. 5). We conclude that where a school district fails to follow the statutory requirement of hiring teachers by written contract, it may not use its own failure to comply with the statute to the teacher's disadvantage. Similarly, the evaluation requirement is designed to benefit the school district. *See Berland,* 314 N.W.2d at 814 (articulating purpose of probationary period as providing "an opportunity for the school district to observe and evaluate a teacher's abilities before deciding whether to employ her"). The school district, rather than the teacher, should suffer the consequences of the district's failure to take advantage of this statutorily mandated opportunity.

■ Flaherty's counsel conceded at oral argument that Flaherty's failure to contest her placement on the seniority lists could indicate that she did not consider 1993 as her hire date, and there is no allegation that the school district acted in bad faith. But a major purpose of the teacher tenure laws is to "strictly circumscribe[ ]" the power of school districts to subject teachers to arbitrary discharge. *Id.* (quoting *McSherry v. City of St. Paul,* 202 Minn. 102, 108, 277 N.W. 541, 544 (1938)). Allowing a school district to hire a teacher without a contract or to fail to comply with evaluation requirements and then to cite absence of a contract or of evaluation as a basis for denying that teacher the benefit of a year of probationary employment creates significant potential for abuse. *Cf. Hudson,* 258 N.W.2d at 597 (de-

scribing purpose of legislation limiting hiring of "emergency" substitutes to one year as preventing school districts from evading tenure laws by rehiring such substitutes "ad infinitum"). We conclude, therefore, that absence of a contract or of evaluation by the school district is not determinative of whether Flaherty's work in 1993–94 was a year of probationary employment and that neither Flaherty's subjective beliefs nor the school district's good faith is relevant to the issue of statutory interpretation before us.

## B. "De minimis" experience

■ A year of probationary employment is not defined either by statute or by case law. Section 125.12 appears to recognize that probationary employment may be significantly less than full-time, by providing an evaluation requirement for probationary teachers who work fewer than 60 days in a school year. Minn.Stat. § 125.12, subd. 3. While the statute sets varying evaluation requirements based on the number of days a teacher works, it does not vary the number of years of probationary employment required to achieve continuing contract status, implying that a teacher may earn the benefit of a year of probationary employment by teaching fewer than 60 days.[5] *See Van Asperen v. Darling Olds, Inc.*, 254 Minn. 62, 73–4, 93 N.W.2d 690, 698 (1958) (stating that separate provisions of a statute must be interpreted in light of one another). The supreme court, moreover, has interpreted the statute to allow a school district to contract with a probationary teacher for a period less than a full academic year. *Poirier v. Independent Sch. Dist. No. 191*, 255 N.W.2d 400, 404 (Minn.1977).

The school district is correct that *Poirier* does not address the minimum work requirement for a year of probationary employment. And we recognize the logic of the school district's argument that the purpose of the statutory provision for a probationary period is to give school districts the opportunity to evaluate teachers before making a permanent hiring decision and that this purpose is frustrated where a teacher's working hours are both few and outside the normal school day, making effective evaluation difficult or impossible. *See Berland*, 314 N.W.2d at 814 (noting that "a school district would have a difficult task of evaluation" where a teacher spent her probationary period in "a variety of temporary assignments"); *also cf. Minneapolis Fed'n of Teachers, Local 59 v. Special School Dist. No. 1*, 270 N.W.2d 773, 776 (Minn.1978) (concluding that full year of substitute teaching constituted year of probationary employment because school administrators were accorded the same "opportunities for evaluation that would have been available had [the teacher] been under a regular probationary contract").

■ But the legislature has authorized courts to add language to a statute only where it does not "in any way affect [the statute's] scope and operation." Minn.Stat. § 645.18 (1996). The courts also have imposed on themselves a prohibition against supplying "what the legislature purposely omits or inadvertently overlooks." *Ullom v. Independent Sch. Dist. No. 112*, 515 N.W.2d 615, 617 (Minn.App.1994) (quoting *Renstrom v. Independent Sch. Dist. No. 261*, 390 N.W.2d 25, 27 (Minn.App.1986)) (internal quotes omitted). Because the statute plainly does not require that employment be full-time and provides no minimum requirement for a "year" of probationary employment, we conclude that we have no authority to amend the statute judicially by creating a "de minimis" exception to the requirements of section 125.12, subdivision 3. Such an amendment is properly a legislative function. We

---

5. The school district argues that under supreme court precedent, section 125.12, subdivision 3, is meant to protect "full-time activity" as opposed to "ancillary" activities. *See Krug v. Independent Sch. Dist. No. 16*, 293 N.W.2d 26, 31 (Minn. 1980). But the court in *Krug* made this statement in determining that a school nurse's duties were the type of full-time activity protected by the statute, in the context of distinguishing cases in which teachers had sought separate continu-

ing contract status for ancillary coaching duties. *Id.* The court determined that Krug was a "teacher" for purposes of section 125.12 because her nurse position required a license, and the decision could therefore be read to indicate that a teacher's full-time activity is the activity for which she is licensed. *Id.* at 30. In any event, we question whether classroom teaching could ever be considered "ancillary" to a teacher's duties.

therefore conclude that Flaherty's 79 hours of nonsubstitute employment in 1993–94 constituted a year of probationary employment.

 The school district calls our attention to an unpublished decision in which this court held that a teacher who needed only one year of probationary employment in the school district to achieve continuing contract status and had held an annual contract for .09 Full Time Equivalent (FTE) employment (1.0 being full-time) had achieved continuing contract status for .09 FTE. *See Adler v. Independent Sch. Dist. No. 877*, No. C9-97-1107, 1997 WL 793497 (Minn.App. Dec. 30, 1997). That case based its holding on the supreme court's determination that a teacher who had worked as a special education tutor for the first two years of her probationary period and as a full-time teacher for the third had achieved the equivalent of continuing contract status, but as a tutor. *Local 59*, 270 N.W.2d at 778. Because the purpose of probationary employment is to provide an opportunity for a school district to evaluate a teacher's skills, we interpret *Local 59* to provide that a teacher achieves continuing contract status in the position in which she spends the majority of her probationary period, thus allowing the school district the greatest opportunity for evaluation. *Cf. id.* at 776, 778; *Berland*, 314 N.W.2d at 814. Because Flaherty spent the majority of her probationary period as a full-time teacher, we conclude that she achieved continuing contract status in that capacity.

### DECISION

Flaherty's petition for certiorari is timely and is not barred by waiver or by failure to exhaust administrative remedies. Because Flaherty's 79 hours of nonsubstitute teaching during the 1993–94 school year constituted a year of probationary employment under section 125.12, she had achieved continuing contract status as a full-time teacher for the 1996–97 school year. The school district's decision to nonrenew her contract in May 1997 was thus based on an error of law.

**Reversed.**